JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff Kris M. Lennon (appellant) appeals the court's granting summary judgment to defendant Cuyahoga County Juvenile Court, et al., (the employer) on her claims for, inter alia, workplace harassment and discrimination. After reviewing the facts of the case and pertinent law, we affirm.
 I. {¶ 2} On December 27, 2001, appellant filed a complaint against her employer, individual supervisors and employees, alleging the following: 1) harassment; 2) tortious interference with employment relationship; 3) intentional infliction of emotional distress; 4) discrimination; and 5) defamation per se. The circumstances leading up to this lawsuit will be detailed as necessary below, but include the following rough sketch of events. Appellant, who is a Caucasian woman, was hired on July 1, 1996 as a probation officer (PO) in the employer's University Circle location (UC). In December 2000, appellant was involved in an altercation with another employee, Gregory Bufford (Bufford), who is an African-American male. After an investigation, the employer disciplined appellant by transferring her from UC to the East Cleveland location (EC). The employer also changed her position from an investigative PO to a supervising PO. Appellant began working at EC in January 2001, and she was allegedly immediately subjected to a hostile work environment. Problems arose between appellant and the EC personnel. The employer began a disciplinary investigation on August 27, 2002 and, on October 4, 2002, appellant resigned.
 {¶ 3} After appellant filed her complaint, extensive discovery ensued, including multiple depositions of various supervisors and probation officers. The employer filed a motion for summary judgment, which the court granted in favor of the employer on all claims in June 2005.
 II. {¶ 4} In her sole assignment of error, appellant argues that "the trial court erred in granting the defendants' motion for summary judgment." Specifically, appellant argues that genuine issues of material fact remain to be litigated and, for this reason, the court's granting summary judgment was improper. Appellant alleges five causes of action in her complaint, all stemming from workplace discrimination. However, in her appellate brief, not one of the causes of action is defined, and appellant cites to neither case nor statutory law relevant to the five causes of action of which she complains. After noting the standard of review we must apply to this case, we will discuss each cause of action and attempt to connect the facts alleged with the elements of the workplace offenses.
Summary judgment standard of review
 {¶ 5} Appellate review of the granting of summary judgment is de novo. Pursuant to Civ.R. 56(C), the party seeking summary judgment must prove that 1) there is no genuine issue of material fact; 2) they are entitled to judgment as a matter of law; and 3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107.
Hostile work environment harassment and discrimination
 {¶ 6} First, it should be established that workplace harassment is a form of illegal employment discrimination. See, e.g., Hampel v. Food Ingredients Specialists (2000),89 Ohio St.3d 169, 179 (holding that "any harassment or other unequal treatment of an employee or group of employees that would not occur but for the [protected class] of the employee or employees may, if sufficiently patterned or pervasive, comprise an illegal condition under [R.C. 4112 et seq.]"). In other words, a claim for workplace harassment is necessarily a claim for discrimination. For this reason, we will address appellant's allegations of harassment and discrimination together.
 {¶ 7} Pursuant to R.C. 4112.02(A), it is unlawful for
any employer, because of the race, color, religion, sex,national origin, disability, age, or ancestry of any person, todischarge without just cause, to refuse to hire, or otherwise todiscriminate against that person with respect to hire, tenure,terms, conditions, or privileges of employment, or any matterdirectly or indirectly related to employment.
 {¶ 8} The first step in proving a discrimination claim is showing that the plaintiff is a member of one of the statutorily protected classes listed above. See, e.g., Mauzy v. KellyServices, Inc. (1996), 75 Ohio St.3d 578 (holding that a prima facie case of discrimination includes establishing that the plaintiff was 1) a member of the protected class; 2) subject to an adverse employment action; 3) qualified for the position; and 4) replaced by, or treated worse than, a person not belonging to the protected class). Appellant's brief is vague on which protected class she is claiming to belong to in relation to the instant case. She makes no mention of being discriminated against because of her gender or age.[1] Peppered throughout her complaint and appellate brief are intimations that she was harassed and discriminated against because of her race, which is Caucasian.
 {¶ 9} The plaintiff has the initial burden of demonstrating a prima facie case of race discrimination in violation of R.C.4112.02(A) by a preponderance of the evidence. If the plaintiff succeeds, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Plumbers Steamfitters Joint Apprenticeship Commt. v.Ohio Civ. Rights Comm. (1981), 66 Ohio St.2d 192, 197. If the employer meets its burden, the plaintiff must then demonstrate that the reason the employer offered is pretextual and that the real reason was discriminatory in nature. Id. Additionally, in "a case of reverse discrimination, a plaintiff must also establish that the defendant is the unusual employer who discriminates against the majority." Stipkala v. Bank One, N.A., Summit App. No. 21986, 2005-Ohio-16. See, also, Carney v. Cleveland Heights— University Heights School Dist. (2001), 143 Ohio App.3d 415,428 (holding that in reverse discrimination cases, "the first element has been modified to require the plaintiff to show background circumstances supporting the inference that his employer was the unusual employer who discriminated against nonminority employees"). In summary, to establish a claim for discrimination, a plaintiff must show, either directly or indirectly, the employer's discriminatory intent. See,Ramacciato v. Argo-Tech Corp., Cuyahoga App. No. 84557,2005-Ohio-506; Barker v. Scovill, Inc. (1983),6 Ohio St.3d 145; McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792.
 {¶ 10} A review of employment discrimination case law shows that an adverse employment action
need not result in pecuniary loss, but must materially affectthe plaintiff's terms and conditions of employment. Factors toconsider when determining whether an employment action wasmaterially adverse include `termination of employment, a demotionevidenced by a decrease in wage or salary, a less distinguishedtitle, a material loss of benefits, significantly diminishedmaterial responsibilities, or other indices that might be uniqueto a particular situation.' Changes in employment conditions thatresult in merely inconvenience or an alteration of jobresponsibilities are not disruptive enough to constitute anadverse employment action.
 Peterson v. Buckeye Steel Casings (1999),133 Ohio App.3d 715, 727 (internal citations omitted). See, also, James v.Delphi Auto. Sys., Franklin App. No. 04AP-215, 2004-Ohio-5493;Hart v. Columbus Dispatch/Dispatch Printing Co., Franklin App. No. 02AP-506, 2002-Ohio-6963.
 {¶ 11} In the instant case, appellant has shown that she is a member of the majority class, being Caucasian in a reverse race discrimination situation. As examples of adverse employment actions, appellant alleges the following: she was suspended for three days as a result of the altercation she had with Bufford; she was transferred to EC, which is a less desirable location than UC; her job title and duties changed from an investigatory PO to a supervisory PO; she was given a case load that was previously "negligently maintained"; she was not trained properly; and certain county employees at EC harassed her, thus subjecting her to a hostile work environment. Furthermore, appellant alleges, and the employer does not dispute, that she was qualified for the position from which she was removed. Finally, appellant alleges that Bufford was treated more favorably in that he was disciplined at least two weeks after she was, he was transferred to a more desirable location, and his job title and duties did not change. Appellant also submits a laundry list of other employees who were allegedly treated differently.
 {¶ 12} After careful review, we conclude that appellant's transfer to EC was not an adverse employment action as contemplated by Ohio case law and R.C. 4112, et. seq. The change in location from UC to EC does not amount to anything more than a mere inconvenience. Appellant's salary and benefits remained the same. The employer submitted evidence that the difference in job duties between an investigatory and a supervisory PO is that the former spends more time in the field and the latter does more paperwork. Other than that, the job responsibilities are identical. Furthermore, the employer's evidence shows that, because the two positions are so similar, for an employee who held one position and is being shifted to the other position, training is on the job and as you go.
 {¶ 13} Appellant's remaining assertions of adverse employment actions are her suspension, that she was given a "negligently maintained" case load, and that she was harassed. After we apply the burden shifting analysis used in employment discrimination law, we find that appellant fails to present any evidence that the employer acted with discriminatory intent. See, Courie v.ALCOA, 162 Ohio App.3d 133, 2005-Ohio-3483 (holding that when the plaintiff demonstrated only that he was treated differently than all other employees, and not that he was treated differently than employees of other races, he was unable to establish a prima facie case of reverse race discrimination).
 {¶ 14} A careful review of the record in the instant case shows that appellant's allegations are supported only by her own affidavit. In the employer's motion for summary judgment, Bufford's disciplinary records for the December 2000 incident with appellant are included. The records clearly state that after the investigation, it was found that appellant initiated the altercation and committed the following workplace violations: striking another person; threatening gestures, hostile work environment; and rude/insulting behavior.
 {¶ 15} In contrast, the employer found that Bufford committed the workplace violation of rude/insulting behavior. The investigation included the statements of two witnesses. The records also show that both Bufford and appellant were disciplined because of the altercation. Specifically, appellant was temporarily suspended, Bufford was verbally reprimanded, and they were both transferred to other offices. Neither of them received a demotion, a change in pay, or a change in working hours. The evidence shows both transfers were lateral moves. It is immaterial, or at least not adverse, that appellant was disciplined on January 3, 2001, while Bufford was disciplined on January 17, 2001. Appellant points to nothing in the record showing background circumstances that her employer, both in general and specifically pertaining to her case, is the unusual employer that discriminates against the majority.
 {¶ 16} Furthermore, we conclude that the employer's legitimate, nondiscriminatory reason for disciplining appellant was that she violated workplace policy. Caroline Penn, appellant's probation manager at EC, stated that "it was considered a special transfer. There, I guess, had been some difficulty at a former office, and I guess the procedure was for the people involved to be moved. And there was a need for a PO position at my office, at the East Cleveland office, therefore, she was moved there. There was an opening for supervision — open case load is what it amounted to." Having found that appellant failed to show discrimination, as a matter of law, regarding her being disciplined and transferred, we turn to her remaining discrimination allegation — the laundry list of employees who were treated differently than she was treated. Appellant's claim that she suffered disparate treatment at the hands of her employer is simply unsubstantiated by any direct or indirect evidence. Appellant claims that she was given "negligently maintained" cases, that she was not given proper training, that co-workers would not take messages for her and otherwise generally harassed her, and that she was disciplined differently than other employees. However, she fails to submit any evidence to support her allegations. For example, appellant claims that the employees who harassed her at EC violated "regulations 500-502(D), (E), 503(9), (12), and 505(4)," yet were not disciplined. However, appellant did not submit an employee policy manual, nor did she define these regulations or clarify where they came from. She submitted no employment records or deposition testimony to prove how others were disciplined compared to how she was disciplined, or to prove that others were even disciplined at all. Furthermore, there is no evidence of racial motivation. See, e.g., Tamayo v. Stack Container Servs., Cuyahoga App. No. 83228, 2004-Ohio-2161 (holding that to establish a claim for hostile work environment harassment, the harassment complained of must be based on sex or race). Her bare assertions simply are not enough to make a prima facie case of discrimination.
 {¶ 17} The only evidence that appellant submits to corroborate her allegations is her own affidavit. Ohio courts have held that
a nonmoving party may not avoid summary judgment by merelysubmitting a self-serving affidavit contradicting the evidenceoffered by the moving party. This rule is based upon judicialeconomy: Permitting a nonmoving party to avoid summary judgmentby asserting nothing more than `bald contradictions of theevidence offered by the moving party' would necessarily abrogatethe utility of the summary judgment exercise. Courts would beunable to use Civ.R. 56 as a means of assessing the merits of aclaim at an early stage of the litigation and unnecessarilydilate the civil process.
 Greaney v. Ohio Turnpike Comm., Portage App. No. 0012,2005-Ohio-5284 (internal citations omitted). See, also, Colemanv. Great Lakes Dredge Dock Co. (Aug. 23, 1990), Cuyahoga App. No. 57440.
 {¶ 18} Accordingly, the court did not err when it granted summary judgment to the employer on appellant's discrimination and harassment claims. The employer was entitled to judgment as a matter of law because appellant did not submit evidence to support the elements of adverse employment action and discriminatory intent.
Tortious interference with employment relationship
 {¶ 19} In Ohio, the elements of tortious interference with employment relationship are as follows: 1) the existence of an employment relationship between plaintiff and the employer; 2) the defendant was aware of this relationship; 3) the defendant intentionally interfered with this relationship; and 4) the plaintiff was injured as a proximate result of the defendant's acts. Costaras v. Dunnerstick, Lorain App. No. 04CA008453,2004-Ohio-6266. Thus, there are three players in a tortious interference claim: the plaintiff, the defendant, and a third-party employer. In the instant case, however, appellant alleges that other employees interfered with her work, making the defendant in her case, her employer. This is not the type of situation that tortious interference with employment relationship is designed to protect. See Everhart v. Francioli (Apr. 29, 1993), Cuyahoga App. No. 62377 (holding that "a supervisor of an employee cannot be held liable for tortious interference with contract") (citing Anderson v. Minter (1972),32 Ohio St.2d 207); Oliver v. Wagner (Dec. 8, 1999), Medina App. No. 2832-M (holding that "tortious interference with a business relationship * * * occurs when the result of the interference is * * * that a third party does not enter into or continue a business relationship with the plaintiff").
 {¶ 20} Because the employer cannot be the defendant in this type of claim, the court did not err when it granted summary judgment against appellant on her claim of tortious interference with an employment relationship.
Intentional infliction of emotional distress
 {¶ 21} To establish a claim for intentional infliction of emotional distress (IIED), a plaintiff must show that: 1) the defendant intended to cause the plaintiff serious emotional distress; 2) the defendant's conduct was extreme and outrageous; and 3) the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. Phung v. Waste Mgt.,Inc. (1991), 71 Ohio St.3d 408, 410. Extreme and outrageous conduct is conduct that goes beyond all possible bounds of decency and is so atrocious that it is "utterly intolerable in a civilized society." Yeager v. Local Union 20 (1983),6 Ohio St.3d 369, 375. "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient to sustain a claim for relief. Id.
 {¶ 22} In the instant case, appellant's entire argument relating to her claim for IIED is as follows: "The behavior in EC was so outrageous that Ms. Lennon's physician insisted that she take a two, (2), week medical leave." It is unclear exactly what behavior appellant is referring to as being outrageous; however, for the purpose of analysis, we assume it is the alleged harassment she suffered at the hands of EC co-workers.
 {¶ 23} Of appellant's allegations, the following incidents are supported by some evidence in addition to appellant's own assertions:[2] 1) that an employee called appellant a racist; and 2) that certain employees chastised and taunted other employees, including appellant. Although this behavior may be childish and unprofessional, it does not amount to extreme and outrageous conduct. Compare, Rice v. Cuyahoga County Dept. ofJustice, Cuyahoga App. No. 85576, 2005-Ohio-5337 (holding that the following actions did not amount to extreme and outrageous behavior: creating untrue accusations against plaintiff, being aggressive, refusing to speak to plaintiff, looking the other way when plaintiff walked by, and being disrespectful); Surry v.Cuyahoga Community College, 149 Ohio App.3d 528, 2002-Ohio-5356
(holding that a supervisor who belittled plaintiff about his age and called him a "dinosaur" and a "relic," coupled with the employer firing plaintiff and filing a criminal proceeding against him, is not outrageous enough to sustain a claim for IIED).
 {¶ 24} Accordingly, the trial court did not err when it granted the employer's motion for summary judgment on appellant's IIED claim.
Defamation per se
 {¶ 25} To succeed on a defamation claim, a plaintiff must show the following: 1) the defendant made a false statement; 2) the statement was defamatory; 3) the statement was published; 4) the plaintiff was injured as a result of the statement; and 5) the defendant acted with the required degree of fault. See,McWeeney v. Dulan, Warren App. No. CA2003-03-036, 2004-Ohio-1507. To constitute defamation per se, the "words must be of such a nature that courts can presume as a matter of law that they tend to degrade or disgrace the person of whom they are written or spoken, or hold him up to public hatred, contempt or scorn." Moore v. P.W. Publishing Co. (1965), 3 Ohio St.2d 183,188. A statement is defamation per se if it "tends to injure a person in his or her trade, profession, or occupation * * * [and] both damages and actual malice are presumed to exist." Knowlesv. Ohio State Univ., Franklin App. No. 02AP-527, 2002-Ohio-6962.
 {¶ 26} There is, however, an exception to the rule that the required degree of fault is presumed in a defamation per se action. The exception is when a qualified or conditional privilege exists to rebut the inference of malice, thus making it essential to the right of recovery. See, Schacht v. AmeritrustCo. N.A. (Mar. 17, 1994), Cuyahoga App. No. 64782.
A qualified or conditionally privileged communication is onemade in good faith on any subject matter in which the personcommunicating has an interest, or in reference to which he has aright or duty, if made to a person having a correspondinginterest or duty of a privileged occasion and in a manner andunder circumstances fairly warranted by the occasion and duty,right or interest. The essential elements thereof are good faith,an interest to be upheld, a statement limited in its scope tothis purpose, a proper occasion, and publication in a propermanner and to proper parties only.
 Hahn v. Kotten (1975), 43 Ohio St.2d 237, 244.
 {¶ 27} In the instant case, appellant is inconsistent as to what statements she claims are defamatory per se. In her complaint, appellant alleges that she was called a racist, she was told she needed to be taught a lesson, and her employer falsely accused her of striking Bufford. She claims that this injured her reputation as a probation officer. However, under what we perceive to be the defamation section of her appellate brief, labeled "The Cookie Jar Caper," appellant argues that her employer falsely accused her of soliciting certain cases from the court.
 {¶ 28} Appellant's co-worker stated another co-worker told her the following about appellant: "I was told not to befriend her because she would stab me in my back and she was racist and she really didn't like me because she would come back and tell people that * * * she was doing my work for me." Although being referred to as a racist may, at times, constitute defamation per se, we find that in the instant case, the statement falls under the qualified privilege exception to the rule. "Generally, a communication made in good faith on a matter of common interest between an employer and an employee, or between two employees concerning a third employee, is protected by qualified privilege." Temethy v. Huntington Bancshares, Inc., Cuyahoga App. No. 83291, 2004-Ohio-1253.
 {¶ 29} Furthermore, the first element a plaintiff must allege in a defamation claim is "that the defendant has asserted a false statement of fact, rather than just an opinion." Rothschild v.Humility of Mary Health Partners, 163 Ohio App.3d 751, 757,2005-Ohio-5481. The Ohio Supreme Court has ruled that opinions are a form of speech protected by the United States and Ohio constitutions. Wampler v. Higgins (2001), 93 Ohio St.3d 111. Additionally, it is a matter of law for the courts to decide whether an allegedly defamatory statement is fact or opinion. See, Vail v. Plain Dealer Publishing Co. (1995),72 Ohio St.3d 279. The test for fact or opinion determination can be found inScott v. The News-Herald (1986), 25 Ohio St.3d 243: "First is the specific language used, second is whether the statement is verifiable, third is the general context of the statement, and fourth is the broader context in which the statement appeared." Id. at 250.
 {¶ 30} In the instant case, the specific language used is unambiguous. One co-worker told another co-worker that appellant was a racist. This weighs heavily toward actionability, as we cannot think of a scenario in which these words are not pejorative. As to whether a statement is verifiable, the Ohio Supreme Court stated that this means "objectively capable of proof or disproof." Wampler at 129. If the defendant implies that he or she has additional knowledge to support the declaration, it may seem more verifiable to a reader or listener. See, Scott, supra. In the instant case, appellant presents no evidence that there are any undisclosed facts to support the speaker's statement that she is a racist. It is reasonable to assume that the listener would believe that the speaker was expressing her "raw, unsubstantiated opinion." Rothschild at 762.
 {¶ 31} In the case at hand, the general context in which the statement was made is the workplace. The language surrounding the name-calling makes the entire statement appear to be job-related gossip rather than gospel. Furthermore, in a broader social context, the remarks are more similar to water-cooler chitchat than they are to a formal employee meeting or memorandum that would convey an appearance of fact. Based on the totality of the circumstances, we find that appellant's being called a racist was a matter of one employee's opinion and thus is constitutionally protected speech, not subject to a defamation claim.
 {¶ 32} As to the statement that appellant struck Bufford, appellant fails to show that the statement was false, as two witness statements support the employer's position that it was true. In addition, this statement was made as a finding in the disciplinary report relating to appellant's altercation with Bufford; therefore, it falls under the qualified privilege exception to defamation per se. Appellant has not shown that this statement was made with malice or that she was injured by the statement.
 {¶ 33} Finally, appellant asserts that her employer stated that she solicited cases, and this statement amounted to defamation. An internal email, dated January 9, 2002, reads in pertinent part as follows: "[An employee] called and told me that he found a case for investigation assigned to Kris. * * * We originally thought that she may be soliciting these cases. But this was not so with this case." In this instance, appellant has not shown that her employer made a false, defamatory statement about her. Additionally, this statement falls under the qualified privilege exception to defamation per se, and appellant certainly has not shown any malice or injury associated with it.
 {¶ 34} Accordingly, we find that the court did not err by granting summary judgment to the employer on appellant's defamation claim.
 {¶ 35} In conclusion, appellant has failed to establish a prima facie case of any of the five causes of action she asserts in her complaint. While we are aware that appellant may have been unhappy at her job after she felt she was treated unfairly, Ohio law recognizes the general rule of employment at will: absent an employment contract, an employee is hired for an indefinite period of time and either the employee or the employer may terminate this relationship for any reason not contrary to law. In appellant's case, she presented nothing evidencing employer liability, and the court did not err when it granted summary judgment against her in toto.
Judgment affirmed.
Blackmon, J., concurs;
 Cooney, P.J., Concurs in Judgment Only. (see SeparateConcurring Opinion.)
[1] Appellant mentions one incident where a co-worker told her she "needed Jesus." However, she does not seem to claim this comment was an example of religious discrimination and, thus, we will not treat it as such.
[2] As evidence, appellant submitted letters to her employer from her attorney documenting her complaints and emails that she sent to her employer complaining of unfair treatment. This correspondence is nothing more than appellant's assertions of her own allegations. It is self-serving and, despite appellant's argument, does not amount to corroborating evidence.