OPINION
{¶ 1} Plaintiff-appellant, John Coyne, appeals the decision of the Clermont County Court of Common Pleas overruling his motion for judgment notwithstanding the verdict or new trial. For the reasons set forth below, we affirm the trial court's judgment.
 {¶ 2} This case concerns a logging operation undertaken by defendant-appellee, Connell Stapleton, in November 1999 on a portion of his property which borders a parcel of property belonging to appellant. Prior to commencing the logging operation, appellee hired a *Page 2 
surveyor to determine the boundaries of his property. Logging then commenced on appellee's property, beginning with the interior portions of the property and moving outward toward the property line separating appellee's property from that of appellant. Toward the end of the operation, appellee's logger, Terry Newman, indicated to appellee that he may have crossed the property line and cut a number of trees on the adjacent property. Appellee ordered that logging operations stop.
 {¶ 3} At the time the logging operation occurred, appellant was serving a prison term for two felonious assault convictions. Following his release from prison, appellant returned to his property, and in 2002 hired Bob Young to undertake a logging operation on his (appellant's) property. At some point during the logging operation, Young discovered a number of tree stumps in a heavily wooded area of the property, and informed appellant of the same. Because he was aware of appellee's recent logging operation, appellant confronted appellee regarding the trees in question. After settlement attempts failed, appellant began erecting a series of large signs along his property referring to appellee as a "liar" and a "thief."
 {¶ 4} On October 14, 2004, appellant filed a complaint alleging claims for negligence, trespass, conversion, and violation of R.C. 901.51[1]
against appellee. Appellee thereafter filed a counterclaim for defamation against appellant based upon the signage appellant erected. A jury trial was held on April 20, 2006, at the conclusion of which the jury found against appellant on all of his claims, and in favor of appellee on his defamation claim. The jury awarded appellee actual and special damages in the sum of $48,000, along with $12,000 in punitive damages. The trial court later assessed attorney fees against appellant in the *Page 3 
amount of $14,900.
 {¶ 5} On June 10, 2006, appellant filed a motion for judgment notwithstanding the verdict ("JNOV") or new trial. The trial court overruled appellant's motion, and appellant timely appealed, advancing a single assignment of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE TRIAL COURT ERRED TO THE PREJUDICE OF [APPELLANT] IN ENTERING JUDGMENT AGAINST HIM AND IN OVERRULING HIS MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR NEW TRIAL."
 {¶ 8} Appellant advances three arguments in support of his assignment of error. First, appellant argues the trial court erred by failing to grant a new trial based upon inflammatory and false statements made by appellee's counsel regarding appellant's criminal history. Second, appellant argues the trial court erred in instructing the jury regarding the criminal offense of theft as it pertains to appellee's counterclaim for defamation. Third, appellant argues the trial court erred in entering judgment against him on his claims for trespass and conversion based upon the evidence presented at trial. We find each of appellant's arguments without merit.
 {¶ 9} Motions for JNOV are governed by Civ.R. 50(B). The standard for granting such motions is the same as that applied to motions for a directed verdict. Airborne Express, Inc. v. Sys. Research Laboratories,Inc. (1995), 106 Ohio App.3d 498, 506, citing Nickell v. Gonzalez
(1985), 17 Ohio St.3d 136, 137. In clarifying the law of JNOV motions, the Ohio Supreme Court has held that "`[t] he evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion [for JNOV] is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different *Page 4 
conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination * * *.'" Osler v. Lorain (1986), 28 Ohio St.3d 345, 347, quoting Posin v. A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271,275. (Emphasis deleted.)
 {¶ 10} With respect to motions for a new trial, an appellate court may reverse a trial court's decision denying such a motion only upon finding the trial court abused its discretion. Airborne Express, at 506, citingRohde v. Farmer (1970), 23 Ohio St.2d 82, paragraph one of the syllabus. An "abuse of discretion" connotes more than an error of law or judgment and indicates that the trial court's decision is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 11} Appellant first contends the trial court should have ordered a new trial where appellee's trial counsel questioned appellant regarding specific criminal conduct, and thereby inflamed the passions of and unfairly prejudiced the jury. "The determination of whether misconduct was sufficient to prejudice the jury is within the discretion of the trial court, and a reviewing court will not reverse absent an abuse of discretion." Worthington City Schools v. ABCO Insulation (1992),84 Ohio App.3d 144, 155, citing Lance v. Leohr (1983), 9 Ohio App.3d 297, 298. "Before a reviewing court will disturb the exercise of the trial court's discretion, the record must clearly demonstrate highly improper argument by counsel which tends to inflame the jury." Lance. Nevertheless, the Ohio Supreme Court has held that "`[w] here gross and abusive conduct occurs, the trial court is bound, sua sponte, to correct the prejudicial effect of counsel's misconduct.'" Pesek v. Univ. Neurologists Assn.,Inc., 87 Ohio St.3d 495, 501, 2000-Ohio-483, quoting Snyder v.Stanford (1968), 15 Ohio St.2d 31, 37. (Emphasis deleted.)
 {¶ 12} While a party is in some instances permitted to question a witness concerning previous convictions of crimes in order to affect the credibility of the witness, "the trial judge *Page 5 
has the responsibility of seeing that the jury does not improperly use such information to the prejudice of either one of the parties."Garland v. Standard Oil Co. (1963), 119 Ohio App. 291, 292; Evid.R. 609. However, where a party is "the first to raise objectionable evidence, he open[s] the door to" the opposing party's use. See Jeavons v. WernerEnterprises, Inc., Ashland App. No. 2004-COA-087, 2006-Ohio-1754, ¶ 11, 12.
 {¶ 13} The record in this case indicates that during cross-examination of appellant, appellee's trial counsel questioned appellant as follows:
 {¶ 14} "Q * * * During or up until December 1st of `01, you were incarcerated; is that correct?
 {¶ 15} "A That's correct.
 {¶ 16} "Q And you were convicted of two counts of felonious assault?
 {¶ 17} "A That's correct.
 {¶ 18} "Q And these were — there were two young men that died as a result of that?
 {¶ 19} "[Appellant's trial counsel]: Objection.
 {¶ 20} "A That's incorrect."
 {¶ 21} The record indicates that immediately following this exchange, the trial court sustained appellant's objection. In addition, the record indicates the court provided the jury with a cautionary instruction that "someone's prior criminal record is admissible for the purpose of helping you test the credibility of the witnesses. You will in your deliberations need to determine which witnesses are credible, which witnesses aren't credible. The fact that someone had been convicted of a felony under certain circumstances is admissible — in this case it is — to help you assess the credibility of the witness; for no other purpose. Specific conduct involved is not admissible to prove that a person acts in conformity with that or not in conformity with that particular conduct at the time. And again, it's only admissible for the purpose of helping you test the credibility of witnesses that testify." *Page 6 
 {¶ 22} In addition, the record indicates that appellant, himself, was the first to bring his previous felonious assault convictions to the jury's attention during trial. During opening statements, the first statement appellant's counsel made to the jury was, "[l]adies and gentlemen, back in 1984 [appellant] was convicted of two felonies — felonies for Felonious Assault, and he was sent to prison. He was sent to prison where he remained until approximately 2002." Thereafter, during his case in chief, appellant indicated on direct examination that he was "convicted of two counts of felonious assault back in 1984," and was "sentenced to prison."
 {¶ 23} As appellant raised the issue of his prior criminal convictions, we cannot say that the questioning by appellee's counsel on cross-examination of appellant, concerning the details of such acts, constitutes a highly improper remark or argument. Moreover, we find no indication in the record that the jury was prejudiced by counsel's remarks concerning whether "two young men * * * died as a result" of his acts of felonious assault. There is no indication in the record that the jury did not heed the trial court's instruction that it was only permitted to consider evidence of appellant's criminal convictions for the purpose of determining his credibility, or that the jury interpreted the trial court's cautionary instruction as an indication that the remark in question was true.
 {¶ 24} After a careful review of the record, we cannot say this is a case in which the alleged misconduct by appellee's counsel was so egregious that the trial court was required to order a new trial. SeePesek, 87 Ohio St.3d at 500-502, 2000-Ohio-483. We therefore find no error in the trial court's decision overruling appellant's motion for JNOV or new trial based upon this issue.
 {¶ 25} In his second argument, appellant contends the trial court erred in instructing the jury regarding the definition of criminal theft for purposes of appellee's defamation claim. "A trial court must give jury instructions which are a correct and complete statement of the *Page 7 
law." Sharp v. Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307, 312, citing Marshall v. Gibson (1985), 19 Ohio St.3d 10, 12. When a specific jury instruction is in dispute, a reviewing court must examine the instructions as a whole. Wozniak v. Wozniak (1993), 90 Ohio App.3d 400,410; Bailey v. Emilio C. Chu, M.D., Inc. (1992), 80 Ohio App.3d 627,631; Wagenheim v. Alexander Grant Co. (1983), 19 Ohio App.3d 7, 16. "If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled." Wozniak, at 410, citing Ohio Farmers Ins. Co. v.Cochran (1922), 104 Ohio St. 427, paragraph six of the syllabus;Stonerock v. Miller Bros. Paving, Inc. (1991), 72 Ohio App.3d 123, 134.
 {¶ 26} Significantly, where a party requests a given instruction, he may not later claim that prejudicial error resulted from the giving of the instruction. See Lester v. Leuck (1943), 142 Ohio St. 91, 92-93. "It is the well-settled rule that a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make. * * * `[A] litigant cannot be permitted, either intentionally or unintentionally, to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible.'" Id., quoting State v.Kollar (1915), 93 Ohio St. 89, 91. (Internal citations omitted.) Accordingly, "a reviewing court will not reverse a judgment of the trial court for an erroneous instruction given to the jury at the insistence of the complaining party." Lumaye v. Johnson (1992), 80 Ohio App.3d 141,145, citing Lester.
 {¶ 27} Further, Civ.R. 51(A) provides that "[a] party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Ohio courts have routinely held that a party fails to preserve for review an error based upon a given jury instruction where the party raises only a general objection to the instructions at trial *Page 8 
and fails to state a specific basis for the objection. See, e.g.,Galmish v. Cicchini, 90 Ohio St.3d 22, 32, 2000-Ohio-7; Hoops v.Mayfield (1990), 69 Ohio App.3d 604, 607.
 {¶ 28} Here, the record indicates that appellant requested that the court take judicial notice of R.C. 2913.01, defining the criminal offense of theft, during his opening statement. "Ladies and gentlemen, in response to the counterclaim for defamation * * * we will ask the Court to take judicial notice of a couple things. One of which is a couple of * * * Ohio Revised Code sections. And we'll ask the Court to take specific notice of the Ohio Revised Code Section 2913.01, which is theft and fraud in general definitions." Counsel continued, "* * * you will learn that truth is an absolute defense to the defamation allegation. You will learn that the Ohio Revised Code recognizes and specifically defines a wrongful conversion as a theft offense. * * * [W] e will ask for a finding of not guilty on the defamation based on at least one theory being that truth is a defense. And the evidence will show that this gentleman converted property wrongfully, which is a theft offense, and a person who commits a theft offense is a thief."
 {¶ 29} In response to counsel's request that the court take judicial notice of the revised code sections pertaining to theft, the court stated: "I don't actually think you need me to take judicial notice in the sense that's going to be an appropriate instruction in this case, but I'll call it judicial notice if you want me to."
 {¶ 30} The court later instructed the jury, with respect to appellee's defamation claim and specifically the element of falsity,[2] that "the crime of theft in Ohio — as relevant to this particular case — is defined as knowingly obtaining or exerting control * * * over property without the consent of the owner or * * * person authorized to give consent with purpose to *Page 9 
deprive the owner of property. * * * Purpose to deprive a person of property is an essential element of theft. And a person acts purposely when it is his specific intention to cause a certain result. Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result. To do an act purposely is to do it intentionally not accidentally. * * * A theft offense means, among other things, an offense under existing or * * * former municipal law of this State, or any other State, or of the United States involving robbery, burglary, breaking and entering, theft, embezzlement, wrongful conversion, counterfeiting, deceit, or fraud."
 {¶ 31} During closing argument, appellant again referred to the criminal definition of theft in arguing that appellee committed an act of theft in cutting the subject trees, and therefore, that his statements referring to appellee as a "thief" did not constitute defamation: "The Ohio Revised Code recognizes wrongful conversion as a theft offense. And a person who commits a theft offense is a thief. * * * [T] hey cannot prove that that statement is false because * * * he committed conversion."
 {¶ 32} While appellant contends he specifically objected at trial to the trial court's jury instruction concerning the criminal definition of theft, our review of the record demonstrates otherwise. The record indicates that after the court discussed with counsel the instructions it would be delivering to the jury, and after the court allowed counsel to address any necessary corrections to or other issues pertaining to the instructions, appellant's counsel stated he had a request "not relating to the * * * instructions."
 {¶ 33} Appellant then requested the court's finding with respect to the issue of whether appellant's statement referring to appellee as a "thief" was a statement of fact or a statement of opinion.[3] The court responded that it "does find that this is * * * a statement of fact and not *Page 10 
a statement of opinion. The court would also note and has found as a matter of law that Mr. Stapleton is a private individual not a public figure * * *." Following the court's ruling, appellant stated the following objection: "I do want to object to the record also to the per se finding in addition to the opinion versus statement of fact. We do object and would submit that, you know, to refer to someone as a thief is not to suggest that an allegation of them having committed a crime rather you could be a thief just as you could be a drunk or you could be something else, but that in and of itself does not constitute an offense of being that way. So for the record we would object." Our review of the record yields no other objection made by appellant's counsel as the court proceeded to instruct the jury.
 {¶ 34} Based upon the foregoing exchange between the court and appellant's counsel, we find appellant failed to specifically object to the court's instruction concerning the criminal offense of theft. In addition, we find appellant's request that the court take judicial notice of the revised code sections pertaining to theft constitutes invited error, such that appellant may not now claim that prejudice resulted from the court instructing the jury according to the law appellant himself requested at the outset of the case. Accordingly, we find appellant's argument concerning the trial court's instruction on the criminal offense of theft without merit.
 {¶ 35} In his final argument, appellant challenges the trial court's decision entering judgment against him and denying his motion for JNOV as to his claims for trespass and conversion. Appellant contends that the court's judgment was against the manifest weight of the evidence. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C. E.Morris Co. v. Foley Const. Co. (1978), *Page 11 54 Ohio St.2d 279, syllabus.
 {¶ 36} "Trespass is the unlawful entry upon the property of another."Jenkins v. Guy, Lawrence App. No. 03CA34, 2004-Ohio-4254, ¶ 23, quotingChance v. BP Chemicals, Inc. (1996), 77 Ohio St.3d 17, 24,1996-Ohio-352. The elements of trespass include, "(1) an unauthorized intentional act, and (2) entry upon land in the possession of another." Id., quoting Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 716. The plaintiff bears the burden of proving each element of a trespass claim. Id.
 {¶ 37} In order to prevail on a claim of civil conversion, the plaintiff must prove by a preponderance of the evidence that "the defendant wrongfully exercised dominion and control over property in exclusion of or inconsistent with the plaintiff's rights." New RockyValley Farms, Inc. v. Pollock (June 23, 1999), Carroll App. No. 681, at *2, citing Joyce v. General Motors Corp. (1990), 49 Ohio St.3d 93, 96. The elements of conversion include, "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." Shinaberry v. Toledo Edison Co. (July 17, 1998), Lucas App. No. L-97-1389 at *2. "The plaintiff in a conversion action must have been deprived of actual or constructive possession of personalty to which the plaintiff is entitled." New RockyValley Farms; One Greenstreet, Inc. v. First National Bank ofDayton (1984), 19 Ohio App.3d 161, 163.
 {¶ 38} Under both claims, appellant was required to prove that the trees in question were located on his property. See Langford v.Green (Feb. 3, 1993), Summit App. No. 15673. Our review of the record indicates that while appellee acknowledged logging operations may have crossed the property line separating his property from that of appellant, no evidence was presented to establish the precise location of the boundary line. At trial, several witnesses testified as to where they thought the boundary line was located, but none of these witnesses was able to specifically identify the location of such line, or the location of *Page 12 
the subject trees in relation to the property line.
 {¶ 39} For instance, appellant's own logger, Bob Young, who initially noticed the trees that had been cut, testified that he is "not a surveyor" and therefore, that the subject trees "could have been [appellant's], and could not have been [appellant's] ." A former employee of appellee, who walked appellee's property with him at one point when he was interested in building a house on the property, testified that he "didn't see any" survey markers on the section of property at issue, and that this area of the property was "heavily wooded."
 {¶ 40} Appellee testified that he had a survey completed prior to the logging operation, and that he specifically limited logging operations to his own parcel. When he became aware that trees may have been logged outside his property, appellee inspected the area, indicating at trial that he "wasn't 100 percent sure that they had crossed the line." Nevertheless, he testified that he ordered logging operations to cease when he became aware his logger may have crossed the property line.
 {¶ 41} The record indicates appellant failed to provide a survey of the property at trial to establish the location of the property line. In addition, our review of the record demonstrates that the trial testimony of various witnesses provided only a speculative indication of the location of the boundary line. Accordingly, we find the members of the jury could reach differing conclusions as to where the subject trees were located, and therefore, differing conclusions as to the element of whether appellee wrongfully entered upon appellant's land and wrongfully deprived him of the subject trees. We therefore find that the jury's resolution as to this issue is supported by some competent credible evidence and is not against the manifest weight of the evidence.
 {¶ 42} Based upon the foregoing, we find the trial court did not err in denying appellant's motion for JNOV or new trial. Appellant's sole assignment of error is overruled accordingly. *Page 13 
 {¶ 43} Judgment affirmed.
YOUNG, P.J. and BRESSLER, J., concur.
[1] This section provides that "[n[o person, without privilege to do so, shall recklessly cut down, destroy, girdle, or otherwise injure a vine, bush, shrub, sapling, tree, or crop standing or growing on the land of another or upon public land."
[2] To sustain an action for defamation, the plaintiff must prove the following elements: "(1) a false and defamatory statement; (2) about the plaintiff; (3) published to a third party without privilege; (4) with fault or negligence by the defendant; (5) that was either defamatory per se or caused special harm to the plaintiff." Rosenbaum v. ChronicleTelegram, Lorain App. Nos. 01CA0079896, 01CA007908, 2002-Ohio-7319, ¶ 24.
[3] "A statement is not defamatory if it is a statement of opinion, because expressions of opinion are generally protected under Section 11, Article I of the Ohio Constitution." Rosenbaum at ¶ 37, citing Vail v.Plain Dealer Publishing Co. (1995), 72 Ohio St.3d 279, 280,1995-Ohio-187; DeVito v. Gollinger (1999), 133 Ohio App.3d 51, 54. "[T]he determination of whether allegedly defamatory language is opinion or fact is a question of law to be decided by the court." Vail, citingScott v. News-Herald (1986), 25 Ohio St.3d 243, 250. *Page 1