OPINION
{¶ 1} Defendants-appellants, Donald and Kimberly Ventling, appeal the trial court's decision finding them in breach of a settlement agreement and issuing a permanent injunction.
 {¶ 2} Appellants and plaintiffs-appellees, Dave and Elaine Hartkemeyer, are adjoining neighbors on Smith Road in St. Clair Township. In 1999, appellees and other neighbors filed a nuisance suit against appellants alleging appellants were operating a *Page 2 
landscaping, irrigation, snow removal and nursery business from their property in violation of local zoning ordinances.[1] It was later determined that appellants were not violating any zoning laws by operating a nursery on their property.
 {¶ 3} In 2000, the parties reached a Settlement Agreement (Agreement) which was read into the record in open court, but never reduced to writing. The Agreement provided that appellees would consult a landscape architect in order to have a tree barrier erected on the property line, which appellants offered to supply and install with up to $3,000 worth of plants and trees for the barrier.[2] Appellants in turn agreed that they would not operate a landscaping, irrigation, or snow removal business from their property, nor would appellants store any landscaping material on their property other than what they needed for personal use.[3] Appellants further agreed that no landscape employee would be permitted to park on the property and that any equipment remaining on the property would be stored in such a manner so as not to be visible from appellees' property. Appellees were obligated, under the Agreement, to notify appellants any time the equipment was visible from appellees' property. Appellants in turn would then have two hours to move the equipment.
 {¶ 4} Appellants were allowed to continue their nursery operation and keep their greenhouses, however, deliveries and pickups, and the operation of heavy equipment for nursery operations, were restricted to weekdays between the hours of 7:00 a.m. and 5:00 p.m.; only two pickups and/or deliveries were allowed each day; and pickup and/or delivery vehicles could only be on the property for the sole purpose of picking up and/or delivering. *Page 3 
The Agreement also required appellants to construct a barn for the storage of their equipment which remained on the property. Appellees and appellants both agreed that neither party would burn trash or brush on their property. Finally, the Agreement contained a liquidated damages clause which required appellants to pay $2,500 if they violated the agreement, and required appellees to pay $2,500 if they brought suit against appellants and no violations were found.[4]
 {¶ 5} Despite this apparent accord between the parties, appellees spent the next six years painstakingly documenting perceived instances of appellants' breaches of the Agreement. Indeed, by the trial court's count, appellees had amassed approximately 577 journal entries and about 300 photographs of the alleged violations. Appellees filed suit in 2005 alleging appellants continued to use their property in violation of the zoning ordinances and the Agreement.[5] Appellees requested relief in the form of a permanent injunction enjoining appellants from operating commercial vehicles on their property; storing equipment and vehicles on their property; and operating equipment or vehicles on, in, or out of their property. Appellees also wanted the Agreement enforced and sought attorney costs and fees and any other appropriate relief.
 {¶ 6} Appellants filed a counterclaim claiming appellees violated the Agreement by failing to erect a tree barrier, burning trash on their property, and failing to notify appellants when vehicles/equipment were visible from appellees' property.[6] Appellants also claimed *Page 4 
that appellees had only filed suit to harass and maliciously prosecute appellants. Appellants requested the trial court to dismiss appellees' claims, find appellees in violation of the Declaration and to be vexatious litigators, and that they be awarded attorney costs and fees and any other appropriate relief.
 {¶ 7} At the bench trial, appellees offered one witness, Dave Hartkemeyer, to testify as to the alleged violations of the Agreement committed by appellants. Appellees also introduced the large number of journal entries and pictures they had collected since the Agreement was memorialized. Appellees later admitted they failed to hire a landscape architect to create the tree barrier and never contacted appellants when vehicles and equipment were in view of their property.
 {¶ 8} Appellants then presented testimony from ten witnesses, including a St. Clair Township Zoning Administrator who testified that he had visited appellants' property numerous times and found no evidence that any zoning violations were being committed by appellants. Five neighbors testified, among other things, that appellants had made significant improvements to their property; removed the nursery from the property in 2004; and allowed them to borrow various pieces of appellants' landscaping equipment. One of the witnesses also testified to a lack of excessive noise or activity on appellants' property. Another of the witnesses, a stay at home grandmother, testified that she had never seen any landscaping employees parked on appellants' property. One of appellants' adjoining neighbors, however, did testify that appellants brought heavy equipment onto the property in order to repair a washed out road which separated their properties. Finally, two of the neighbors testified that they had observed appellees burning trash on their property, although appellees later denied this at trial. One of appellants' landscaping employees testified that the company was not located on appellants' property. Another employee testified that he was aware of the general terms of the Agreement and felt that appellants were complying *Page 5 
with its terms. That employee admitted to once coming onto appellants' property to borrow landscaping equipment and remove some vegetation.
 {¶ 9} Appellant, Kimberly Ventling, then took the stand and confirmed that the nursery was moved off the property in 2004. She testified that over the past few years, appellants had extensively landscaped their 7.7 acre property which she evidenced through photographs admitted into the record. She also testified that she believed appellees had violated the Agreement by burning trash on their property, failing to build a tree barrier, and failing to inform appellants when equipment was visible from appellees' property. She did, however, admit that appellants had not constructed the equipment barn required by the Agreement.
 {¶ 10} After hearing all of this evidence and examining a plethora of exhibits, the trial court found that appellants did not violate any zoning ordinances. However, the trial court did find appellants in violation of the Agreement based in large part on the journal entries and photographs appellees introduced at trial. In addition, the trial court found that appellees were in violation of the Agreement because they burned trash on their property, failed to erect the tree barrier, and failed to notify appellants when equipment was visible from appellees' property. Finally, the trial court found that appellees were not vexatious litigators, nor did they bring suit to harass or maliciously injure appellants.
 {¶ 11} The trial court permanently enjoined appellants from operating any landscaping, snow removal, and irrigation business from their property and from bringing or storing any equipment onto the property associated with those businesses, other than for personal use. The trial court made an allowance for appellants to bring their landscaping, snow removal, and irrigation equipment onto the property for personal use so long as they notified appellees when they brought the equipment on their property. Use of the equipment was restricted, by the trial court to a permitted duration, not exceeding 48 hours. Both parties were also *Page 6 
enjoined from burning trash and brush on their property.
 {¶ 12} The court withheld enforcement of the permanent injunction pending appellees' erection of a tree barrier and burying their propane tank. On February 26, 2007, the trial court issued a judgment entry granting the permanent injunction reiterating the trial court's findings and its prohibitions. The entry also contained a decision by the trial court declining to award liquidated damages to either party by finding each party in violation of the Agreement. Appellants filed an appeal alleging two assignments of error.
 {¶ 13} Assignment of Error No. 1:
 {¶ 14} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTS-APPELLANTS WHEN IT RULED THAT THEY WERE IN VIOLATION OF THE PARTIES' SETTLEMENT AGREEMENT AND NOT ENTITLED TO LIQUIDATED DAMAGES OF $2,500.00."
 {¶ 15} In their first assignment of error, appellants essentially argue that the trial court erred when it relied on appellees' journal entries and photographic evidence in finding appellants breached the Agreement. In addition, appellants argue that because appellees, rather than appellants, were in breach of the Agreement, appellants are entitled to liquidated damages. We find no merit to either argument.
 {¶ 16} "In reviewing the trial court's judgment, it is well-established that every reasonable presumption must be made in favor of the judgment and findings of fact." Shemo v. Mayfield Hts.,88 Ohio St.3d 7, 10, 2000-Ohio-258. In addition, an appellate court must give deference to a trial court's findings because it is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. Any issues relating to witness credibility and/or the weight to be given to the evidence is the function of the trier of fact.Bechtol v. Bechtol (1990), *Page 7 49 Ohio St.3d 21, 23; Seasons Coal at 80. Therefore, a judgment which is supported by competent, credible evidence will not be reversed on appeal. C.E. MorrisCo. v. Foley Const. Co. (1978), 54 Ohio St.2d 279, 280.
 {¶ 17} "[A] settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and * * * such agreements are valid and enforceable by either party." Continental West CondominiumUnit Owners Assn. v. Howard E. Ferguson, Inc., 74 Ohio St.3d 501, 502,1996-Ohio-158. "Where a settlement agreement is voluntarily entered into in the presence of the trial court, and made a part of the record, it may not be repudiated by either party, and will be summarily enforced."Seng v. Seng, Clermont App. No. CA2007-12-120, 2008-Ohio-6758, ¶ 9.
 {¶ 18} Where "a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm,73 Ohio St.3d 107, 108, 1995-Ohio-214, quoting Inland Refuse Transfer Co. v.Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322. While factual determinations are given great deference, questions of law are subject to de novo review. Nationwide at 108.
 {¶ 19} There is competent and credible evidence to support the trial court's determination that appellants breached the terms of the Agreement. While the trial court acknowledged that appellants presented evidence showing some of the equipment mentioned in appellees' journals and memorialized in appellees' photographs was for personal use, the court found there was "ample evidence," that in other instances, appellants violated the Agreement. Indeed, any single violation was enough to find appellants in breach of their obligations under the Agreement. Because the trial court was the trier of fact it was in the best position to determine the credibility of the witnesses, and the court had the responsibility for weighing all of the evidence adduced at trial. *Page 8 
 {¶ 20} We further note that appellants testified that there were instances where appellants, or their son, would leave a landscaping jobsite and drive home with a trailer of equipment only to embark the following day to another job. This violation of the Agreement was memorialized in appellees' photographic and journalized evidence. Appellants also testified they brought home equipment for their neighbors to use. While the Agreement did not prohibit this practice per se, the Agreement seemed to contemplate appellants only using their equipment/materials for personal purposes. In addition, there was evidence from both parties that landscape employees have parked on the property which was also a violation of the Agreement. Finally, appellants never built the barn to store their equipment as required by the Agreement. This alone was a violation of the Agreement and amounted to a breach by appellants.
 {¶ 21} While appellants may argue that the trial court relied too heavily on the quantity of appellees' evidence rather than the quality of evidence, we note that appellants had ten witnesses while appellees only offered one. The trial court clearly had sufficient evidence from which it could determine that appellants had violated the terms of the Agreement. Therefore, we find there is competent, credible evidence to support the trial court's judgment finding appellants in breach of the Agreement.
 {¶ 22} "[W]hen parties enter into contracts they do so with the expectation that each will perform his part, and that the benefit which each expects to derive under the contract is the inducement which leads him to make it [although] * * * [t]he contract may provide for payment of a stipulated or liquidated sum." Sheffield-King Milling Co. v.Domestic Science Baking Co. (1917), 95 Ohio St. 180, 183. A reviewing court may not reverse a damage award unless it is against the manifest weight of the evidence. Altman Co. v. Primo Painting, Inc. (May 5, 1998), Franklin App. No. 97APE09-1254, 1998 WL 226426, at *9, citingSchendel v. Bradford (1922), 106 Ohio St. 387. So long as there is competent, credible *Page 9 
evidence a judgment will not be reversed as against the manifest weight.C.E. Morris Co., 54 Ohio St.2d at 280.
 {¶ 23} Under the first assignment of error, appellants also challenge the trial court's failure to award liquidated damages pursuant to the Agreement. The Agreement's liquidated damages section clearly states that upon a violation of the Agreement appellants would be required to pay appellees $2,500. The Agreement also states appellees must pay appellants $2,500 if they brought suit against appellants and no violations of the Agreement were found. Here, the trial court found appellants in violation of the Agreement, but not in violation of any zoning ordinances. In addition, the trial court found that appellees were in violation of all of the terms of the Agreement they had agreed to: erecting the barrier, notifying appellants of equipment they could see, and burning refuse. Rather than assessing appellants $2,500, and awarding damages to appellants based on appellees' lack of compliance with the Agreement, the trial court chose not to award either party any damages because they both were in breach of the Agreement. We find this judgment to be in accordance with fundamental and equitable principles of fairness as neither party should benefit from their own respective wrongdoing. See State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. ofCommrs., Slip Opinion No. 2008-Ohio-6253, ¶ 35.
 {¶ 24} Because the court's judgment, both in finding appellants in breach and not awarding damages to either party, is supported by competent, credible evidence, appellants' first assignment of error is hereby overruled.
 {¶ 25} Assignment of Error No. 2:
 {¶ 26} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTS-APPELLANTS WHEN, AS PART OF THE REMEDY, IT ORDERED APPELLANTS TO PERSONALLY CONTACT APPELLEES WHEN BRINGING EQUIPMENT ONTO THE PROPERTY FOR PERSONAL USE AND BY REQUIRING THE EQUIPMENT TO REMAIN *Page 10 
ON THE PROPERTY FOR NO MORE THAN 48 HOURS."
 {¶ 27} In their second assignment of error, appellants argue that the trial court erred in requiring them to notify appellees whenever appellants bring home equipment for personal use and let appellees know the length of time the equipment will be on appellants' property, which cannot exceed 48 hours.[7] We find no merit to appellants' argument.
 {¶ 28} "An injunction is an extraordinary remedy in equity where there is no adequate remedy available at law." Garono v. State (1988),37 Ohio St.3d 171, 173. "It is not available as a right but may be granted by a court if it is necessary to prevent a future wrong that the law cannot." Id. An injunction is improper where there is an adequate remedy at law.Haig v. Ohio State Bd. of Edn. (1992), 62 Ohio St.3d 507, 510.
 {¶ 29} The trial court has sole discretion in deciding whether to grant or deny an injunction. Danis Clarkco Landfill Co. v. Clark Cty.Solid Waste Mgt. Dist., 73 Ohio St.3d 590, 604, 1995-Ohio-301. A reviewing court may not reverse the trial court's judgment on the injunction absent a clear abuse of discretion. Id. Abuse of discretion is more than just an error of law or judgment, it indicates the trial court's judgment was unreasonable, arbitrary or unconscionable.Blakeman's Valley Office Equip., Inc. v. Bierdeman, 152 Ohio App.3d 86,90, 2003-Ohio-1074, ¶ 22.
 {¶ 30} The decision as to whether an injunction should be granted depends on the specific facts and circumstances of a given case.Restivo v. Fifth Third Bank of Northwestern Ohio, N.A. (1996),113 Ohio App.3d 516, 520, citing Cullen v. Milligan (1992), 79 Ohio App.3d 138,140. "In granting an injunction, a court of equity may attach thereto terms and *Page 11 
conditions designed to serve the ends of justice and to protect the rights of all parties in interest." Village of Richmond Hts. v. Bd. ofCty. Commrs. of Cuyahoga Cty. (1960), 112 Ohio App. 272, 283. Thus, in addition to ordering an injunction, a trial court also retains broad discretion when it frames the terms of its injunctive order.Restivo at 520, citing Superior Sav. Assn. v. Cleveland Council ofUnemp. Workers (1986), 27 Ohio App.3d 344, 346.
 {¶ 31} Appellants focus the first part of their argument on the requirement they communicate to appellees their intentions to bring any landscaping, snow removal and/or irrigation equipment onto their property for personal use. Appellants argue that the trial court's terms are unworkable and unrealistic because there is such animosity and tension between the parties. Appellants also argue that the requirement will "set the parties up for failure" and escalate already existing tensions between them.
 {¶ 32} Appellants' argument is simply not a compelling reason to overturn the decision of the trial court. The trial court is not requiring appellants to speak to appellees face-to-face or engage in a conversation over the telephone. Instead, the trial court is requiring appellants to notify appellees when they are bringing any of their landscaping, snow removal and/or irrigation equipment onto their property. There need not be a discussion or even a conversation, as other methods of communication exist which would be sufficient to comply with the terms of the trial court's injunction. This requirement does place a burden on appellants, but it is a requirement which is well within the trial court's discretion to impose.
 {¶ 33} The second part of appellants' argument is that the trial court's 48-hour time constraint is too restrictive. Appellants have done an extensive amount of landscaping, changes, and improvements to their property. Some of this work included, excavating a pond, regrading a considerable portion of their property, moving "400 tons" of rocks, building a large paver stone patio, building a pergola, moving "5,000 cubic feet" of dirt, laying "600 *Page 12 
yards" of wood chips, building a paver stone driveway, planting "150" trees, putting in an underground sprinkler system, regrading a lane separating appellants' property from another neighbor, maintaining and then later moving the nursery business, engaging in lawn restoration with hydroseeders and hay blowers and mulching large portions of their property twice a year. Appellants did most of the work on weekends, evenings and any other free time they could find in order to beautify their property.
 {¶ 34} While we are aware that all of these changes took weeks and months to accomplish, we cannot say that the trial court erred in requiring a time limit on how long appellants can bring landscaping, snow removal and/or irrigation equipment to their home for personal purposes. While 48 hours is an extremely restrictive time span, especially when doing work on 7.7 acres, the trial court was merely trying to strike a compromise, between the neighbors, to ensure more accord between the parties, especially since appellees sought to enjoin any use of equipment on appellants' property. This requirement seeks to protect each party's rights and we cannot say the trial court abused its discretion when it placed this condition in the permanent injunction.
 {¶ 35} We overrule appellants' second assignment of error, because the trial court did not abuse its discretion in placing notification and time limits on appellants' personal use of landscaping, snow removal and/or irrigation equipment on their property.
 {¶ 36} Judgment affirmed.
YOUNG and POWELL, JJ., concur.
[1] In 1998, the St. Clair Township Zoning Department advised appellants in writing that they were violating zoning regulations by operating a nonagricultural, landscaping business in a residential zone. Appellant, Kimberly Ventling, testified that upon receipt of this notice they immediately moved "everything except for their nursery" off of the property.
[2] As Robert Frost once wrote, "`[g]ood fences make good neighbors.'"The Mending Wall 27 (1914).
[3] Appellee, Dave Hartkemeyer, testified during the trial that he believed "materials" included vehicles, trailers, and equipment. Appellant, Donald Ventling, appeared to have an alternate meaning.
[4] The Agreement also stated that if a court found appellants had violated the Agreement, appellees had the option to void the Agreement and pursue their original claims.
[5] Specifically, appellees allege appellants are operating a nonagricultural business from their property in violation of zoning laws and the Agreement and storing and operating vehicles and equipment on their property in violation of zoning laws and the Agreement.
[6] Appellants also claimed appellees were in violation of a Declaration of Protective Covenants and Reservations of Easements on the property by failing to bury a visible propane tank. The trial court found there was a violation and ordered appellees to bury their propane tank.
[7] We note that neither appellants nor appellees have complied with App. R. 16(A)(7) and (B), which require briefs to cite case law or statutes in support of their arguments. See State v. Baker,157 Ohio App.3d 87, 2004-Ohio-2207, ¶ 7. While we may decline to review an assignment of error for this very reason, we believe in this one limited instance, "`[f]airness and justice'" would be better served if we made a decision on the merits. Rothschild v. Humility of Mary HealthPartners, 163 Ohio App.3d 751, 2005-Ohio-5481, ¶ 5, quoting DeHart v.Aetna Life Ins. Co. (1982), 69 Ohio St.2d 189, 193. *Page 1