OPINION
{¶ 1} Defendants-appellants, Jaime Cox and Ashley Cox, appeal from the judgment of the Warren County Court of Common Pleas entering a favorable verdict in a defamation suit to plaintiff-appellee, Ethan Cox, following a jury trial, as well as its decision denying their motion for a new trial. We affirm the decision of the trial court.
 {¶ 2} Jamie Cox, Ethan's former step-mother, and Ashley Cox, his younger half-sister, accused him of raping and sexually abusing Ashley when she was a child. Ethan, after learning of these accusations, filed a complaint alleging that he had been defamed by *Page 2 
Jamie and Ashley. In response, Ashley filed a counterclaim alleging that she had been sexually abused by Ethan. Following a four-day trial, the jury found Jamie and Ashley's accusations of rape and sexual abuse were false and returned a unanimous verdict in favor of Ethan. The jury then ordered Jamie to pay $50,000 in compensatory damages and $150,000 in punitive damages, and furthermore, ordered Ashley to pay $100,000 in compensatory damages and $200,000 in punitive damages. Jamie and Ashley, collectively appellants, then filed a motion for a new trial and remittitur. The trial court denied appellants' motion for a new trial and overruled Ashley's motion for remittitur. However, with Ethan's consent, the trial court granted Jamie's motion for remittitur and reduced her punitive damages award from $150,000 to $50,000.
 {¶ 3} Appellants now appeal, raising four assignments of error.
 {¶ 4} For ease of discussion, appellants' first and second assignments of error, both dealing with jury instructions, will be addressed together.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "THE TRIAL COURT ERRED BY ISSUING WRITTEN JURY INSTRUCTIONS DECLARING THAT [APPELLANTS] DEFAMED ETHAN."
 {¶ 7} Assignment of Error No. 2:
 {¶ 8} "THE COURT ERRED BY INSTRUCTING THE JURY TO AWARD PUNITIVE DAMAGES TO [ETHAN], AND BY FAILING TO INSTRUCT THE JURY THAT PUNITIVE DAMAGES WERE EVEN AVAILABLE FOR [APPELLANTS]."
 {¶ 9} Appellants, in their first and second assignments of error, essentially argue that the jury instructions provided by the trial court were improper, unfair, erroneous, and "so slanted as to require reversal for [a] new trial."
 {¶ 10} "A trial court must give jury instructions which are a correct and complete statement of the law." Coyne v. Stapleton, Clermont App. No. CA2006-10-080, 2007-Ohio-6170, ¶ 25, *Page 3 
citing Sharp v. Norfolk W. Ry. Co., 72 Ohio St.3d 307, 312,1995-Ohio-224. When a specific jury instruction is in dispute, a reviewing court must examine the instructions as a whole. Coyne
at ¶ 25, citing Wozniak v. Wozniak (1993), 90 Ohio App.3d 400, 410. In turn, if the jury instructions, taken in their entirety, "fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled." Wozniak at 410.
 {¶ 11} However, pursuant to Civ. R. 51(A), "[a] party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Ohio courts, including this court, "have routinely held that a party fails to preserve for review an error based upon a given jury instruction where the party raises only a general objection to the instructions at trial and fails to state a specific basis for the objection." Coyne at ¶ 27, citing Galmish v. Cicchini, 90 Ohio St.3d 22,32, 2000-Ohio-7; Hoops v. Mayfield (1990), 69 Ohio App.3d 604, 607. Accordingly, a party may not challenge a jury instruction on appeal unless a specific objection is raised prior to the jury deliberations.Stoll v. Parrott Strawser Properties, Inc., Warren App. Nos. CA2002-12-133, CA2002-12-137, 2003-Ohio-5717, ¶ 19.
 {¶ 12} Appellants, in their reply brief, claim they did not waive their challenge to the jury instructions on appeal because they "specifically objected to the written jury instructions in a conference before the trial judge shortly before the instructions were given to the jury," as well as in their post-trial motion for a new trial and remittitur, and again "in the first two assignments of error in [their] opening appellate brief." However, contrary to appellants' claim, "a meaningful review of a trial court's decision must be based on the record before us, and not based on mere conclusory assertions found in an appellate brief."[1] Wilhoite v. Kast, *Page 4 
Warren App. No. CA2001-01-001, at 18, 2001-Ohio-8621.
 {¶ 13} That being said, based on our review of the record, we are unable to find any evidence to indicate appellants made specific objections to the jury instructions as required by Civ. R. 51(A).[2] As a result, because the record before us does not contain any indication that they made specific objections to the jury instructions provided, we decline appellants' invitation to infer that such objections were in fact made. Therefore, appellants have waived the right to assign error to the jury instructions given by the trial court on appeal. See id.; see, also, Schwartz v. Wells, 5 Ohio App.3d 1, 3. Accordingly, appellants' first and second assignments of error are overruled.
 {¶ 14} Assignment of Error No. 3:
 {¶ 15} "THE TRIAL COURT ERRED BY EXCLUDING EVIDENCE THAT A KEY WITNESS FOR THE PLAINTIFF PERJURED HIMSELF."
 {¶ 16} Appellants, in their third assignment of error, essentially argue that the trial court erred when it refused to allow them to introduce extrinsic evidence of prior inconsistent statements made by Phillip Cox, Jamie's former spouse, and Ethan and Ashley's father, for *Page 5 
impeachment purposes. We disagree.
 {¶ 17} Decisions regarding the admission of evidence are within the sound discretion of the trial court and may not be reversed absent an abuse of discretion. Proctor v. NJR Properties, L.L.C., 175 Ohio 3d. 378, 2008-Ohio-745, ¶ 14, citing O'Brien v. Angley (1980),63 Ohio St.2d 159, 163. An abuse of discretion is more than just an error of law or judgment; it indicates the trial court's judgment was unreasonable, arbitrary or unconscionable. Hartkemeyer v. Ventling, Butler App. No. CA2007-03-074, 2009-Ohio-93, ¶ 29.
 {¶ 18} Evid. R. 613(B), pertaining to the admissibility of extrinsic evidence in regard to prior inconsistent statements, states, in pertinent part:
 {¶ 19} "Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:
 {¶ 20} "(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require; [and]
 {¶ 21} "(2) The subject matter of the statement is one of the following:
 {¶ 22} "(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;
 {¶ 23} "(b) A fact that may be shown by extrinsic evidence under Evid. R. 608(A), 609, 616(A), 616(B) or 706;
 {¶ 24} "(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence."
 {¶ 25} Further, under the "collateral matter doctrine," a party may not present extrinsic evidence to contradict a witness on a collateral matter. State v. Wilson, Montgomery App. No. 22120, 2008-Ohio-4130, ¶ 27, citing Byomin v. Alvis (1959), 169 Ohio St. 395; see, e.g., *Page 6 State v. Cornett (1992), 82 Ohio App. 3d 624, 635. As a result, it is not error for a trial court to prohibit extrinsic evidence of a prior inconsistent statement where the statement is collateral to the issues being tried, and the statement is only pertinent to the credibility of the witness. State v. Markland, Stark App. No. 2001CA00356, 2002-Ohio-5104, ¶ 42, citing Cornett. Therefore, "when the prior inconsistent statement is collateral to the issue being tried and pertinent to the credibility of the witness, its admission is a matter within the sound discretion of the trial judge." Markland at ¶ 42, citing State v. Shaffer (1996), 114 Ohio App.3d 97; State v. Soke
(1995), 105 Ohio App.3d 226.
 {¶ 26} In this case, appellants argue that the trial court erred and abuse its discretion when it excluded documentary and videotape evidence indicating Phillip provided inconsistent statements during cross-examination about whether he had previously claimed to have attended law school, to have been a member of the United States Secret Service, to have played in the National Football League, or whether he ever claimed Ethan, his son, had been a highly ranked soccer player and been drafted by the Detroit Tigers Major League Baseball franchise.
 {¶ 27} The trial court, in its decision to exclude the extrinsic evidence of Phillip's alleged prior inconsistent statements, found the documents and videotape related only to collateral matters and that these "matters were just unnecessarily unrelated to the issues before the Court * * *." Based on our review of the record, we fail to see how Phillip's alleged prior inconsistent statements had any bearing on the pertinent and material issues presented at trial, and therefore, we find no error in the trial court's decision to exclude such evidence. As a result, because the excluded extrinsic evidence was collateral to the issues at hand, the trial court did not err and did not abuse its discretion in refusing to permit appellants to introduce such extrinsic evidence at trial. Accordingly, appellants' third assignment of error is overruled. *Page 7 
 {¶ 28} Assignment of Error No. 4:
 {¶ 29} "THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S MOTION FOR A NEW TRIAL ON THE GROUND THAT THE JURY'S DAMAGE AWARD WAS EXCESSIVE."
 {¶ 30} Appellants, in their fourth assignment of error, claim that the trial court erred in denying their motion for a new trial because the damages awards ordered against them were excessive under federal and state law, draconian, and a product of passion or prejudice on the part of the jury. These arguments lack merit.
 {¶ 31} Initially, we note that the assessment of damages lies "so thoroughly within the province of the [trier of fact] that a reviewing court is not at liberty to disturb the [trier of fact's] assessment" absent an affirmative finding of passion and prejudice, or a finding that the award is manifestly excessive or inadequate. Pesic v.Pezo, Cuyahoga App. No. 90855, 2008-Ohio-5738, ¶ 21, citingMoskovitz v. Mt. Sinai Med. Ctr., 69 Ohio St.3d 638, 655, 1994-Ohio-324; see, also, Civ. R. 59(A)(4) (stating a new trial may be granted due to "[e]xcessive or inadequate damages, appearing to have been given under the influence of passion or prejudice"). Further, the decision to grant or deny a motion for a new trial is reviewed for an abuse of discretion.Hover v. O'Hara, Warren App. No. CA2006-06-077, 2007-Ohio-3614, ¶ 71, citing Sharp, 72 Ohio St.3d at 312. As stated previously, an abuse of discretion is more than just an error of law or judgment; it indicates the trial court's judgment was unreasonable, arbitrary or unconscionable. Hartkemeyer, 2009-Ohio-93 at ¶ 29.
 {¶ 32} Appellants, in their first argument, claim that the trial court erred in denying them a new trial because the punitive damages awards were excessive and "fundamentally unfair on constitutional due process grounds." Appellants, although not particularly clear in their argument, essentially claim that the punitive damages awards ordered against them violated their federal substantive due process rights pursuant to theFourteenth Amendment *Page 8 
of the United States Constitution. This argument lacks merit.
 {¶ 33} The United States Supreme Court has held that punitive damages awards violate due process when the awards can be characterized as "grossly excessive" in relation to the state's legitimate interest in punishing unlawful conduct and deterring its repetition. Wightman v.Consolidated Rail Corp., 86 Ohio St.3d 431, 439, 1999-Ohio-119; TXOProduction Corp. v. Alliance Resources Corp. (1993), 509 U.S. 443, 456,113 S.Ct. 2711. The Supreme Court identified three "guideposts" to be used when determining whether punitive damages awards are unconstitutionally excessive. These guideposts are "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." Blust v. Lamar Advertising Co., Montgomery App. No. 19942, 2004-Ohio-2433, ¶ 40, quoting State Farm Mut. Auto. Ins.Co. v. Campbell, 538 U.S. 408, 418, 123 S.Ct. 1513; BMW of N. Am., Inc.v. Gore, 517 U.S. 559, 116 S.Ct. 1589.
 {¶ 34} Appellants argue that the first and second guideposts weigh in favor of finding the punitive damages awards ordered against them were unconstitutionally excessive.[3] We disagree with this argument.
 {¶ 35} The first guidepost, regarding the degree of reprehensibility of appellants' conduct, is the "most important indicium of reasonableness of a punitive damages award * * *." State Farm at 419, quoting BMW at 575. Further, in assessing the reprehensibility of the conduct in question, courts are to consider five factors: "(1) whether the harm caused *Page 9 
was physical as opposed to economic; (2) whether the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) whether the target of the conduct had financial vulnerability; (4) whether the conduct involved repeated actions or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery, deceit, or mere accident." State Farm
at 419. "The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect." Id.
 {¶ 36} Appellants, in regard to the first guidepost, argue that their repeated accusations and allegations that Ethan raped and sexual abused Ashley, his younger half-sister, "was simply not reprehensible" because they "did not spread malicious gossip [and] did not attempt to destroy [his] standing in [his] community, or in his workplace, or among his peers." However, based on our review of the record, we fail to see how appellants' ongoing allegations accusing Ethan of engaging in the unfathomable acts of rape and sexual abuse, which the jury determined was false, was anything other than an egregious and reprehensible act that effectively destroyed his reputation within his community.
 {¶ 37} Furthermore, the evidence indicates that appellants' false accusations caused Ethan to suffer severe emotional harm. In fact, Ethan testified that after he learned of appellants' outrageous allegations he became reclusive, no longer had an interest in dating, had strained relationships with his other family members, and that he was unable to focus or be productive at work. Ethan also testified that due to appellants' allegations his income decreased significantly and, in an effort to overcome his stress and mental anguish, found it necessary to seek the help of a psychologist.
 {¶ 38} The evidence also indicates that appellants reiterated and continued to repeat such falsities to several people, including at least three other family members. In turn, the continued dissemination of these false allegations makes it clear that appellants' conduct did *Page 10 
not stem from a mere isolated incident.
 {¶ 39} Finally, we find it inconceivable to believe appellants' acts, which cannot be classified as anything other than malicious gossip, was somehow accidental. As a result, we find the first guidepost, the so-called "reprehensibility guidepost," does not even remotely support appellants' claims that their conduct "was simply not reprehensible" and that the punitive damages awards were unconstitutionally excessive.
 {¶ 40} Next, in determining what is excessive under the second guidepost, the Supreme Court "has consistently rejected the notion of a bright-line mathematical formula for the computation of the reasonableness of punitive damages awards." Wightman,86 Ohio St.3d at 441. That being said, however, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damage, to a significant degree, will satisfy due process," and even then "where a particularly egregious act has resulted in only a small amount of economic damages larger ratios may comport with due process."Blust at ¶ 43, quoting State Farm, 538 U.S. at 425. (Internal quotations omitted.)
 {¶ 41} In this case, the jury found that Ethan was entitled to compensatory damages from Ashley in the amount of $100,000, and punitive damages in the amount of $200,000. In addition, the jury also found that he was entitled to compensatory damages from Jamie, his former step-mother, in the amount of $50,000 and punitive damages in the amount of $150,000, which the trial court later reduced, with Ethan's consent, to $50,000.
 {¶ 42} Here, the punitive damages awards are either twice the amount, or equal to the amount, of the compensatory damages awarded. In turn, we cannot conclude that the disparity, if any, between the two awards violates due process. This is particularly true given that R.C. 2315.21(D)(2)(a) specifically permits a plaintiff to recover punitive damages of two times the compensatory damages awarded by the jury, and such a calculation was deemed not to violate either the United States Constitution or the Ohio Constitution in Arbino v. *Page 11 Johnson Johnson, 116 Ohio St.3d 468, 2007-Ohio-6948. Therefore, because the ratio between the compensatory damages awards and the punitive damages awards is relatively minimal, we find that there is no significant disparity between the two damage awards that would support appellants' claim that such an award was somehow unconstitutionally excessive.
 {¶ 43} In light of the foregoing, we find that neither of the of the applicable due process guideposts support appellants' contention that the punitive damages award violates their federal substantive due process rights under the Fourteenth Amendment of the United States Constitution. Therefore, the trial court did not err or abuse its discretion by denying appellants' motion for a new trial due to the allegedly excessive award based on federal due process grounds.
 {¶ 44} While a punitive damages award may not be excessive under the United States Constitution to justify a new trial, the damages award may nevertheless violate Ohio law.
 {¶ 45} Initially, appellants, in regard to their state law claims, argue that the trial court erred and abused its discretion by denying them a new trial because the punitive damages awards were "draconian" and went "beyond mere punishment and deterrence." We disagree.
 {¶ 46} "The purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct," and therefore, "a punitive damages award is more about defendant's behavior than the plaintiff's loss." Moskovitz, 69 Ohio St.3d at 651; Wightman at 439. The Ohio Supreme Court, in analyzing whether a punitive damage award was excessive, noted that "the focus of the award should be the defendant, and the consideration should be what it will take to bring about the twin aims of punishment and deterrence as to that defendant."Dardinger v. Anthem Blue Cross Blue Shield, 98 Ohio St.3d 77,2002-Ohio-7113, ¶ 178. The court continued by stating that it did "not require, or invite, financial *Page 12 
ruination of a defendant that is liable for punitive damages [and that] the punitive damages award should not go beyond what is necessary to achieve its goals." Id.
 {¶ 47} In this case, as noted above, appellants engaged in acts of egregious behavior by falsely accusing Ethan of raping and sexually abusing his younger half-sister, which ultimately led him to suffer severe emotional harm. Moreover, although the punitive damages awards may cause appellants some financial strain, they have failed to provide this court with any evidence, other than their mere speculation, to indicate that the punitive damages awards did anything other than "punish and deter" them from engaging in such outrageous conduct in the future. As a result, the trial court did not err or abuse its discretion in denying appellants' motion for a new trial as the punitive damages awards were not "draconian."
 {¶ 48} Next, appellants claim the trial court erred in denying their motion for a new trial because "the jury's passion and prejudice [was] plainly apparent from the verdict." This argument lacks merit.
 {¶ 49} To determine whether a verdict was influenced by passion or prejudice, the court should consider the amount of damages returned and whether the record discloses that the verdict was induced by: "(a) admission of incompetent evidence, (b) misconduct on the part of the court or counsel, or (c) by any other action occurring during the course of the trial which can reasonably be said to have swayed the jury in their determination of the amount of damages that should be awarded."Fromson Davis Co. v. Reider (1934), 127 Ohio St. 564, 569; see, also,Rinehart v. Brown, Ross App. No. 05CA2854, 2006-Ohio-1912, ¶ 16. Furthermore, "the size of a verdict, without more, is insufficient to prove passion or prejudice," but instead, there must be something in the record that the complaining party can point to that wrongfully inflamed the sensibilities of the jury. Weidner v. Blazic (1994),98 Ohio App.3d 321, 334-35; Whiloite, Warren App. No. CA2001-01-001, at 15, 2001-Ohio-8621. *Page 13 
 {¶ 50} Again, appellants have failed to provide us with any evidence, besides their mere speculation, to indicate the verdict was induced by the admission of incompetent evidence, misconduct on the part of the court or counsel, or that the jury was improperly swayed by the actions of either party in making their determination of the amount of damages to award Ethan. As a result, because appellants were unable to point to anything in the record to indicate the jury was influenced by passion or prejudice, we find that the trial court did not err in denying appellants' motion for a new trial.
 {¶ 51} In light of the foregoing, we find that the jury's award of punitive damages is not excessive under federal or state law, and the jury's verdict was not influenced by passion or prejudice. Accordingly, the trial court did not err or abuse its discretion in denying appellants' motion for a new trial.
 {¶ 52} Judgment affirmed.
WALSH and RINGLAND, JJ., concur.
[1] {¶ a} We remind appellants that the duty to provide a record of the trial court proceedings for review on appeal rests upon them, and, in the absence of a complete and adequate record necessary for the resolution of an assignment of error, this court must presume the regularity of the trial court proceedings. Wilhoite at 18, 2001-Ohio-8621, citing Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199. Furthermore, when events transpire that were not captured on the record, which is exactly what occurred here, "appellants] can meet [their] burden by other suitable alternatives for proper compliances with the appellate rules." Wilhoite at 18, 2001-Ohio-8621.
{¶ b} For example, App. R. 9(C) permits "the appellants] [to] prepare a statement of the evidence or proceedings from the best available means, including [their own] recollection" where "no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable." There is no indication that appellants, or their counsel, attempted to amend the record pursuant to App. R. 9(C), or provide this court with an updated transcript noting the contents of the two unrecorded sidebar conferences. However, it should be noted that appellants did file a "Motion to Correct the Trial Record" with the Warren County Court of Common Pleas on December 12, 2008, but such motion was denied in an entry dated January 7, 2009.
[2] Additionally, and also contrary to appellants' claim, the record does not contain any evidence that the parties held a conference before the instructions were given to the jury. However, the transcript does indicate appellants objected immediately before the trial court reviewed the verdict forms and interrogatories, and then asked to approach the bench just after this review was complete. These conversations were classified as "[o]ff the record conversation[s] at the bench, out of the hearing of the jury" and were not part of the trial transcript. Further, after the trial court judge completed giving the instructions to the jury, the judge asked if there was "anything else requested * * * by the [appellants]," to which their counsel replied, "No, thank you, Your Honor."
[3] Appellants concede that the third guidepost, in regard to the difference between punitive damages awarded by the jury in this case compared to the civil penalties authorized or imposed in comparable cases, is of limited use and "appears not to be applicable."