ROTHSCHILD, Appellant,

v.

HUMILITY OF MARY HEALTH PARTNERS et al., Appellees.

[Cite as *Rothschild v. Humility of Mary Health Partners,*
163 Ohio App.3d 751, 2005-Ohio-5481.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 04 MA 106.

Decided Oct. 12, 2005.

752

David J. Gerchak, for appellant.

John P. O'Neil, James O'Connor, and Joseph W. Borchelt, for appellees.

---

DeGenaro, Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiff-appellant Dr. Bruce Rothschild appeals the decision of Mahoning County Court of Common Pleas that granted judgment on the pleadings to defendants-appellees, Humility of Mary Health Partners and Brennan, Manna & Diamond, a law firm based in Akron, Ohio, on Rothschild's claim of defamation. Dr. Rothschild's claim was based on a letter defendants sent to the Office of the Inspector General of the Ohio Department of Health and Human Services. Rothschild argues there are issues of material fact about whether the letter expressed a false statement of fact.

{¶ 2} In order to state a defamation claim, a plaintiff must allege, among other things, that the defendant has asserted a false statement of fact, rather than just an opinion. The letter in question calls Rothschild "lazy" and offers to assist the Inspector General in any investigation of Rothschild's practices. But given the context, we conclude that there is no set of facts to support his claim that Humility's statements were statements of fact rather than of opinion. Accordingly, Rothschild's claim must fail as a matter of law. The trial court's decision granting judgment on the pleadings to defendants is affirmed.

## Facts

{¶ 3} On August 28, 2002, Rothschild sent a letter to the Inspector General seeking to clarify what he saw as a conflict between his patients' rights of privacy and Humility's requirement that physicians provide documentation showing that the tests requested are medically necessary. Rothschild forwarded a copy of this letter to Humility's legal counsel, the Brennan law firm. Upon receipt of the letter, Attorney Joseph A. Shoaff, a member of the firm, sent a letter to the Inspector General responding to Rothschild's concerns. In that letter, Shoaff "surmised" that Rothschild was too "lazy" to comply with the hospital's requirements based on the fact that other physicians had provided the information freely. He also stated that Rothschild had a duty to obtain patient consent for this type of medical release and brought into question whether Rothschild had met this requirement. Shoaff then offered to assist the Inspector General to investigate Rothschild's consent practices.

{¶ 4} In response to this letter, Rothschild filed a complaint alleging that the letter Shoaff had sent to the Inspector General was defamatory and attached a copy of that letter to the complaint. Rothschild also attached a copy of the August 28 letter he had sent to the Inspector General. Defendants answered and filed a Civ.R. 12(C) motion for judgment on the pleadings. The trial court granted defendants' motion for judgment on the pleadings, concluding that the letter from Shoaff to the Inspector General contained nothing more than an opinion.

## Judgment on the Pleadings

{¶ 5} Rothschild has not assigned any error to the trial court's decision, violating App.R. 16(A). App.R. 12(A)(2) gives us the authority to disregard any unassigned error. Nevertheless, "[f]airness and justice are best served when a court disposes of a case on the merits." *DeHart v. Aetna Life Ins. Co.* (1982), 69 Ohio St.2d 189, 193, 23 O.O.3d 210, 431 N.E.2d 644. In this case, it is clear that Rothschild's only argument is that the trial court erred when granting defendants' motion for judgment on the pleadings.

{¶ 6} Since this appeal involves a judgment on the pleadings, rather than summary judgment or a judgment after trial, we are very limited in our ability to review and discuss the facts of this case. Civ.R. 12(C) allows "any party [to] move for judgment on the pleadings" after the pleadings are closed, but within such time as not to delay the trial. The standard for ruling on a Civ.R. 12(C) motion is similar to that used when ruling on a motion under Civ.R. 12(B)(6). *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 569–570, 664 N.E.2d 931. However, in contrast to a motion under Civ.R. 12(B)(6), the trial court must consider both the complaint and the answer when ruling on a Civ.R. 12(C) motion. Id. at 569, 664 N.E.2d 931. "Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." Id. at 570, 664 N.E.2d 931. This court applies that same standard when reviewing the trial court's decision. *Flanagan v. Williams* (1993), 87 Ohio App.3d 768, 772, 623 N.E.2d 185.

{¶ 7} If in this appeal we had only the complaint and the answer to the complaint to examine, this case could likely have survived judgment on the pleadings, as there are factual scenarios that could reasonably be seen to support Rothschild's defamation complaint. However, we need not consider those here because, significantly, we have a copy of the allegedly libelous statement, in the form of a letter that was made part of the filing of the complaint. When the allegedly libelous document is attached to and incorporated by reference into the complaint, it may be considered as part of pleadings when reviewing a trial court ruling on a motion to dismiss. See, e.g., *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 649 N.E.2d 182.

## Fact vs. Opinion

{¶ 8} Rothschild's complaint alleged defamation. In a defamation action, a plaintiff must prove "falsity, defamation, publication, injury, and fault." *State ex rel. Sellers v. Gerken* (1995), 72 Ohio St.3d 115, 117, 647 N.E.2d 807. Defendants argue that Rothschild did not state a claim for defamation since he can prove no set of facts supporting the first element, i.e., that they made an assertion of a false statement of fact.

{¶ 9} Both Section 11, Article I of the Ohio Constitution and the First Amendment to the United States Constitution protect freedom of speech. However, there is a distinct difference between federal and state constitutional protections specifically regarding opinion. The Supreme Court made it clear that there is no federal constitutional protection for opinions: "We are not persuaded

that * * * an additional separate constitutional privilege for 'opinion' is required to ensure the freedom of expression guaranteed by the First Amendment." *Milkovich v. Lorain Journal Co.* (1990), 497 U.S. 1, 21, 110 S.Ct. 2695, 111 L.Ed.2d 1. The Ohio Supreme Court has determined that opinions are a protected form of speech under the Ohio Constitution apart from any protection that might be afforded under the United States Constitution. *Vail.* This protection for opinions exists for media defendants as well as for private citizens. *Wampler v. Higgins* (2001), 93 Ohio St.3d 111, 112, 752 N.E.2d 962. Thus, in Ohio, any analysis of a defamation claim must begin with the court providing a definitive interpretation as to whether the defendant has stated an opinion or has made a factual assertion. The determination of whether an allegedly defamatory statement is fact or opinion is a matter of law to be decided by the court. *Vail,* 72 Ohio St.3d at 280, 649 N.E.2d 182.

{¶ 10} The Ohio Supreme Court has adopted a totality-of-the-circumstances test to determine whether a statement is fact or opinion. *Scott v. News–Herald* (1986), 25 Ohio St.3d 243, 250, 25 OBR 302, 496 N.E.2d 699. Under this test, a court should consider four factors. "First is the specific language used, second is whether the statement is verifiable, third is the general context of the statement and fourth is the broader context in which the statement appeared." Id. at 250, 25 OBR 302, 496 N.E.2d 699. The *Vail* court went on to clarify that the totality-of-the-circumstances test is very flexible, and when reviewing all four factors the weight given any one factor will vary depending on the circumstances of each case. *Vail,* 72 Ohio St.3d at 282, 649 N.E.2d 182. "This analysis is not a bright-line test, but does establish parameters within which each statement or utterance may stand on its own merits rather than be subjected to a mechanistic standard." Id.

## Specific Language Used

{¶ 11} When reviewing the specific language used in the letter, we must focus on how a reasonable reader would understand the statements. *Vail,* 72 Ohio St.3d at 282, 649 N.E.2d 182. In doing so, we must examine the common usage or meaning of the allegedly defamatory words themselves in order to determine whether the statements at issue have a concise meaning that is likely to give rise to clear factual implications. *Wampler,* 93 Ohio St.3d at 127–128, 752 N.E.2d 962. "Statements that are 'loosely definable' or 'variously interpretable' cannot in most contexts support an action for defamation." Id. at 128, 752 N.E.2d 962, quoting *Ollman v. Evans* (C.A.D.C.1984), 750 F.2d 970, 980. In contrast, statements accusing someone of a crime do have a well-defined meaning. Id.

{¶ 12} *Scott* cautioned that labeling something opinion does not necessarily make it so.

{¶ 13} "Objective cautionary terms, or 'language of apparency' places a reader on notice that what is being read is the opinion of the writer. Terms such as 'in my opinion' or 'I think' are highly suggestive of opinion but are not dispositive, particularly in view of the potential for abuse. We are mindful of Judge Friendly's observation that one should not 'escape liability for accusations of crime simply by using, explicitly or implicitly, the words "I think." ' *Cianci v. New Times Publishing Co.* [(C.A.2, 1980), 639 F.2d 54], 64. Accordingly, we are not persuaded that a bright-line rule of labeling a piece of writing 'opinion' can be a dispositive method of avoiding judicial scrutiny. Such labeling does, however, strongly militate in favor of the statement as opinion." Id., 25 Ohio St.3d at 252, 496 N.E.2d 699.

{¶ 14} In *Wampler*, a landlord brought a defamation action against the author of a letter to the editor that was published in the local newspaper. Id., 93 Ohio St.3d at 112–113, 752 N.E.2d 962. This letter accused the landlord of constructively evicting a local grocery store by charging the store "exorbitant rent." Id. at 112, 752 N.E.2d 962. Additionally, the letter accused the landlord of being a "ruthless speculator." Id. at 113, 752 N.E.2d 962. The Ohio Supreme Court agreed with the trial court that while this language was "plainly pejorative in tone," it was "imprecise and subject to myriad subjective interpretations." Id. at 128, 752 N.E.2d 962. Thus, the specific language used in the letter weighed against actionability. Id.

{¶ 15} We conclude that some of the statements that Rothschild objects to are like those in *Wampler*, while others are more like a criminal accusation. Shoaff first "surmised" that Rothschild might be "lazy." Calling someone "lazy" is not materially different from calling someone a "ruthless speculator." Both are "plainly pejorative in tone," but both are also inherently subjective and open to many interpretations. Therefore, the specific language used here weighs against actionability.

{¶ 16} In contrast, Shoaff's statement questioning Rothschild's medical-release consent practices is similar to a criminal accusation, which *Wampler* specifically identified as a statement with a well-defined meaning. The statement in question invites the Inspector General to investigate Rothschild's consent practices. The Inspector General's primary duty is to investigate and report on "wrongful acts or omissions" committed by state agencies, officers, or employees, but it also has the duty to report wrongful acts or omissions committed by persons who are not state officers or employees that it becomes aware of in the course of an investigation to the appropriate authorities. R.C. 121.42. We see no

reason for distinguishing a request that the Inspector General investigate a matter from one requesting that the police investigate a matter. Thus, the specific language used here weighs in favor of actionability.

## Verifiability

{¶ 17} The second prong asks whether the allegedly defamatory statement is verifiable. This prong of the test is used to determine whether the allegedly defamatory statements at issue "are objectively capable of proof or disproof." *Wampler*, 93 Ohio St.3d at 129, 752 N.E.2d 962. "[A] reader cannot rationally view an unverifiable statement as conveying actual facts." *Ollman*, 750 F.2d at 981. In other words, the court must determine whether the statements are "subject to proof or disproof upon the application of facts to an accepted legal standard." *Wampler* at 129, 752 N.E.2d 962.

{¶ 18} Shoaff's speculation that Rothschild is lazy is not verifiable since there is no way to objectively determine whether a particular person is lazy or not. Once again, it is similar to the statements in *Wampler*, which the Ohio Supreme Court determined were "standardless." Id., 93 Ohio St.3d at 129, 752 N.E.2d 962. These kinds of statements are simply not amenable to objective proof or disproof.

{¶ 19} However, if the author implies that he or she has such knowledge to support the expressed opinion, "the expression of opinion becomes as damaging as an assertion of fact." *Scott*, 25 Ohio St.3d at 251, 25 OBR 302, 496 N.E.2d 699. But if the opinion does not have a plausible means of verification, a reasonable reader will normally presume that there is no specific factual content to support the statement. *Condit v. Clermont Cty. Review* (1996), 110 Ohio App.3d 755, 760, 675 N.E.2d 475.

{¶ 20} Shoaff's letter does not imply that he has any undisclosed facts that would support his opinion. Shoaff sets forth what he considers to be the relevant facts: the hospital requires certain documentation, other doctors provide that documentation, and Rothschild does not want to provide that documentation. Shoaff uses these facts, and only these facts, to leap to the conclusion that Rothschild is lazy, and Shoaff apparently expects the reader to draw the same conclusion based on the same limited set of facts. Thus, this factor also weighs against this statement's actionability.

{¶ 21} Shoaff's second statement also does not appear to be easily verifiable, as it appears to be based on the same limited set of facts presented in his letter. He states that the Inspector General should investigate Rothschild's consent practices. Significantly, he neither states nor implies facts that Rothschild's consent practices are deficient in any way that would warrant investigation.

Thus, the reasonable reader is left with the conclusion that Shoaff is expressing his raw, unsubstantiated opinion. Thus, there is no factual assertion that can be applied to any accepted legal standard to verify Shoaff's second statement. This factor weighs against actionability.

### General Context

{¶ 22} The third prong requires that courts look at the immediate context in which the statements at issue appear. *Wampler*, 93 Ohio St.3d at 130, 752 N.E.2d 962. "We examine more than simply the alleged defamatory statements in isolation, because the language surrounding the averred defamatory remarks may place the reasonable reader on notice that what is being read is the opinion of the writer." Id. For example, if apparently defamatory statements are contained in a letter clearly meant to be a persuasive statement of the declarant's opinion, then they are not actionable. See *Jorg v. Cincinnati Black United Front*, 153 Ohio App.3d 258, 2003-Ohio-3668, 792 N.E.2d 781, at ¶ 21 (statements in letter were not defamatory since letter was advocacy, not objective news).

{¶ 23} In this case, the general context for the allegedly defamatory statements is Shoaff's entire letter. The letter purports to do two things: (1) provide some background to the Office of the Inspector General concerning Rothschild and the Humility of Mary Health Partners, and (2) present some legal analysis regarding patient confidentiality.

{¶ 24} Shoaff's letter contains "language of apparency," i.e., language that places a reader on notice that what is being read is the opinion of the writer. See *Scott*, 25 Ohio St.3d at 252, 25 OBR 302, 496 N.E.2d 699. In his letter, Shoaff states, "I can only surmise that Dr. Rothschild is too lazy to provide the information * * *." Attorney Shoaff justifies his conclusion by stating that "[o]ther physicians provide this information freely." There are obviously many reasons why Rothschild might have refused to provide the information in question, including the reason stated by Rothschild himself in his own letter to the Office of the Inspector General. To Shoaff, though, there is only one apparent explanation, and this tends to indicate that his conclusion is not based on facts but on his personal opinion.

{¶ 25} On the other hand, Shoaff's letter also purports to be a neutral, even-handed observation of the events that led to Rothschild's inquiry to the Office of the Inspector General. Shoaff states, "I would like to provide you with some background information that you may find helpful in assessing the validity of Dr. Rothschild's letter." In this statement, Shoaff informs the reader that what follows will be "information," and not opinion. Furthermore, the letter was written by an attorney to a government agency, from one professional to another.

One would normally expect objective and neutral observations in this context, not personal feelings.

{¶ 26} In this particular case, the general context of the allegedly defamatory statements—namely, Shoaff's entire letter—does not shed much light on whether Shoaff intended to express objective facts or personal opinions. The letter could be read either way. Therefore, we are left to rely on the other factors mentioned in *Scott* to guide our analysis.

## Broader Social Context

{¶ 27} The final prong involves a determination of the influence that certain well-established genres of writing will have on the average reader. *Wampler*, 93 Ohio St.3d at 131, 752 N.E.2d 962. For instance, in both *Vail* and *Ollman* the courts said that since a statement was on a newspaper's opinion pages, then an average reader was less likely to believe that the statement is one of objective fact.

{¶ 28} In this case, Shoaff's statements were made in a letter sent to the Inspector General, a government official whose duty was to investigate and report wrongdoing. This is not a forum within which the average person would expect that most statements would be statements of opinion rather than fact. Thus, this factor weighs in favor of actionability.

## Conclusion

{¶ 29} In this case, we have two factors weighing in favor of actionability, one factor weighing against, and one factor essentially neutral. Of course, these factors are meant to be only guides to our interpretation of the totality of the circumstances, and we may consider any factor to be more or less important than any other. Rothschild's complaint incorporated the entire subject letter. As we have before us the full context in which the allegedly defamatory statements appear, we are able to determine whether they are fact or opinion as a matter of law for purposes of reviewing a judgment on the pleadings.

{¶ 30} The most important element of this case is that Shoaff has neither implied nor stated that he has additional facts to support his opinion. Rather, there is a very limited statement of what Shoaff deems relevant: the hospital requires documentation that other doctors provide and Rothschild will not. There is a missing link to reach Shoaff's opinion that Rothschild is lazy, for example, why he will not provide the documentation. Thus, the statement is not easily verified. Shoaff was clearly expressing frustration with Rothschild, both for his refusal to obtain the necessary consent from his patients and for his decision to take the dispute to the Inspector General. It is nothing more than his

personal opinion, and, as such, Shoaff's letter to the Office of the Inspector General does not support a claim for defamation.

{¶ 31} The totality of the circumstances shows that Rothschild can prove no set of facts upon which a reasonable fact-finder could conclude that Shoaff's letter contained statements of fact. Since the statements were opinion, they are not actionable in Ohio. The trial court properly granted judgment on the pleadings to defendants and the judgment of the trial court is affirmed.

Judgment affirmed.

VUKOVICH and WAITE, JJ., concur.