[Cite as *Tree of Life Church v. Agnew*, 2014-Ohio-878.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| TREE OF LIFE CHURCH, FWC, ET AL., | ) | |
| | ) | |
| PLAINTIFFS-APPELLEES, | ) | |
| | ) | CASE NO. 12 BE 42 |
| V. | ) | |
| | ) | OPINION |
| JAMES M. AGNEW, III, ET AL., | ) | |
| | ) | |
| DEFENDANTS-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:          Civil Appeal from Court of Common
                                    Pleas of Belmont County, Ohio
                                    Case No. 11CV363

JUDGMENT:                           Reversed and Remanded

APPEARANCES:
For Plaintiff-Appellee               Attorney Jeffrey W. McCamic
Jeff Johnson                         56-58 Fourteenth Street
                                     Wheeling, WV 26003

For Defendant-Appellant              Attorney Keith A. Sommer
                                     409 Walnut Street
                                     P.O. Box 279
                                     Martins Ferry, Ohio 43935

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: March 4, 2014

DONOFRIO, J.

{¶1}   Defendant-appellant, James Agnew, III, appeals from a Belmont County Common Pleas Court judgment granting summary judgment in favor of plaintiffs-appellees, Jeff Johnson, Gary Curtis, Alice Hill, Pamela Jackson, Deborah Johnson, Phyllis Miles, Sylvia Rideout, and Tree of Life Church FWC, on appellant's counterclaims for slander, libel, and improper expenditure of church funds.

{¶2}   Appellant is the pastor of Tree of Life Church.  Appellees were all members of the church in July 2011.  At that time, appellees delivered a letter signed by their attorney and dated July 15, 2011, to appellant asking for his resignation.  (J. Johnson Supp. Aff. Ex. A). The letter gave various reasons in support of the resignation request.  It stated in part:

> First, it is believed that prior to the formal establishment of the Finance Committee, when you had sole control over the church's finances, there was a significant amount of funds commingled with your personal funds and misapplied for your personal benefit and not the church's.  It is believed that this conduct may very well be viewed as criminal in nature.  Likewise must the deacons be grave, not double-tongued, not given to [sic.] much wine, not greedy of filthy lucre; Holding the mystery of faith in a pure conscience.  And let these also first be proved; then let them use the office of a deacon, being found blameless.  *Timothy* 3:8-10.

{¶3}   The letter then goes on to raise issues with appellant's wife's behavior and urges appellant to resign as pastor.

{¶4}   Appellant forwarded the letter to his attorney, who wrote to appellees' attorney asking for specific facts.   (J. Johnson Supp. Aff. Ex. B).   In response, appellees' attorney sent a letter to appellant's counsel informing him that he had advised appellees to contact the Pentecostal Assembly of the World for direction and guidance.   (J. Johnson Supp. Aff. Ex. C).   On July 29, 2011, appellees then forwarded a copy of their July 15 letter to Bishop Charles Ellis, III.  (J. Johnson Supp.

Aff. Ex. D). At some time thereafter, the letter was also published to members of the congregation.

{¶5} On September 15, 2011, appellees filed a complaint against appellant and Tree of Life Apostolic Church (Apostolic Church). The complaint made the following allegations. In 2003, appellant started an unincorporated nondenominational religious association known as Tree of Life Church FWC (FWC) with the aid of appellees Alice Hill, Jeff Johnson, Deborah Johnson, and Sylvia Rideout. FWC is governed by its trustees, who are appointed by a majority of its membership. Appellees are a majority of the trustees. Since FWC's inception, appellant has commingled church funds with his personal funds, converted church funds for his own use, and mismanaged church finances. In October 2008, FWC purchased real estate to use as their sanctuary. In July 2011, appellees, along with a majority of FWC's members requested appellant to resign as pastor. Shortly thereafter, appellant changed the locks on the sanctuary, barring church members from entering. Appellant then appointed a new board of trustees and finance committee, which converted FWC's funds for appellant's benefit and the benefit of defendant Apostolic Church.

{¶6} Appellees' complaint sought a declaration that they are the true representatives of FWC, an injunction enjoining appellant from locking the sanctuary, and a judgment of $60,000 for funds improperly commingled with personal funds and misapplied for appellant's personal benefit.

{¶7} Appellant filed a counterclaim in response raising defamation claims for both slander per se and libel per se against all individual appellees. The counterclaim also asserted a claim against appellees Jeff Johnson and Sylvia Rideout for improperly expending church funds in excess of $1,500 for the personal benefit of Johnson's family.

{¶8} Appellant next filed a motion for summary judgment on appellees' claims. The trial court granted the motion. The court found FWC had not entered an appearance in the matter. It further found that appellees, who claimed to be trustees

of FWC, were not trustees. The court concluded that the named church did not bring the action and the named plaintiffs did not have standing under the rules of the named church to bring the action. Consequently, the court dismissed appellees' action. Appellees did not appeal this ruling.

{¶9} Appellees next filed a motion for summary judgment on appellant's counterclaim. Appellant filed a response in opposition.

{¶10} The trial court granted appellees' motion for summary judgment. As to the defamation claim, it found that (1) the statements appellant relied on in alleging defamation were made in the context of parties seeking an accounting from the religious authorities charged with a duty of operating the church and (2) the statements were claims for which parishioners sought an explanation and redress in a manner reasonably assumed to flow from the organized structure of the church. The court also found the procedure utilized by appellees was consistent with Section 19 of the bylaws stating matters of grave importance affecting the church were to be addressed by the bishop. And as to the improper expenditure of church funds claim, the court found the funds that were improperly expended were reimbursed to the church.

{¶11} Appellant filed a timely notice of appeal on December 10, 2012.

{¶12} Appellant raises a single assignment of error that states:

THE TRIAL COURT COMMITTED ERROR IN GRANTING SUMMARY JUDGMENT TO PLAINTIFFS/APPELLEES AGAINST DEFENDANT/APPELLANT'S COUNTERCLAIMS WHICH ALLEGED SLANDER AND LIBEL, AND IMPROPER EXPENDITURE OF CHURCH FUNDS.

{¶13} In reviewing a trial court's decision on a summary judgment motion, appellate courts apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.*, 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (7th Dist.1998). Thus, we shall apply the same test as the trial court in determining whether summary

judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**{¶14}** Appellant argues the letters dated July 15, 2011, and July 29, 2011, contained defamatory statements that appellees published to the church congregation and the bishops of the church. He asserts appellees, while asserting truth as a defense, offered no proof that the statements they made against him were true. Appellant contends the letters were aimed to remove him as pastor.

**{¶15}** For support, appellant points to Jeffery Johnson's deposition testimony that he had no facts or documents to support the allegation that appellant mismanaged church finances or commingled church funds with his own. (Johnson Dep. 23). He further points out that appellees admitted the statements were not verifiable. Additionally, appellant points to Johnson's deposition testimony that many statements contained in appellee's complaint were false, including that appellant started the church with the aid of appellees and that appellees were trustees of the church. (Johnson Dep. 16, 19-20). And he points to Johnson's statements that he had no facts or documents to support the notion that funds were not used for church purposes. (Johnson Dep. 23, 26).

**{¶16}** Appellant asserted claims for both defamation and improper expenditure of church funds. We will address each in turn.

**{¶17}** Summary judgment is appropriate in defamation cases because whether words are defamatory is a question of law which the court must decide. *Sethi v. WFMJ Television, Inc.*, 134 Ohio App.3d 796, 804, 732 N.E.2d 451 (7th

Dist.1999). Defamation is a false statement that injures a person's reputation; exposes a person to public ridicule, hatred, contempt, shame, or disgrace; or affects a person adversely in his trade or business. *Murray v. Knight-Ridder, Inc.*, 7th Dist. No. 02 BE 45, 2004-Ohio-821, ¶13, citing *Matalka v. Lagemann*, 21 Ohio App.3d 134, 136, 486 N.E.2d 1220 (10th Dist.1985).

**{¶18}** Defamation can be classified as "slander" or "libel." "Slander" refers to spoken defamatory words. *Matikas v. Univ. of Dayton*, 152 Ohio App.3d 514, 788 N.E.2d 1108, 2003-Ohio-1852, ¶27. "Libel," on the other hand, refers to written or printed defamatory words. *Id.* In this case, appellant alleges both slander per se and libel per se.

**{¶19}** Slander per se is "accomplished by the very words spoken." *McCartney v. Oblates of St. Francis de Sales*, 80 Ohio App.3d 345, 353, 609 N.E.2d 216 (6th Dist.1992). "Imputing to one the crime of embezzlement is slanderous per se and actionable without an allegation of special damage." *Schoedler v. Motometer Gauge & Equipment Corp.*, 134 Ohio St. 78, 15 N.E.2d 958 (1938), paragraph four of the syllabus.

**{¶20}** Similarly, libel per se is accomplished by the very words written. *Wilson v. Harvey*, 164 Ohio App.3d 278, 2005-Ohio-5722, 842 N.E.2d 83, ¶19 (8th Dist.). "Published language which, of itself, reflects upon the character of a person by bringing him into ridicule, hatred or contempt, or affects him injuriously in his trade or profession, and which is not ambiguous and uncertain of definition, constitutes libel per se." *Goudy v. Dayton Newspapers, Inc.*, 14 Ohio App.2d 207, 237 N.E.2d 909 (2d Dist.1967), paragraph one of the syllabus. And like slander per se, actual damages and malice are presumed and need not be proven. *Wilson,* at ¶19.

**{¶21}** "[I]n Ohio, any analysis of a defamation claim must begin with the court providing a definitive interpretation as to whether the defendant has stated an opinion or has made a factual assertion." *Rothschild v. Humility of Mary Health Partners*, 163 Ohio App.3d 751, 2005-Ohio-5481, 840 N.E.2d 258, ¶9 (7th Dist.). This is because opinions are a protected form of speech under Section 11, Article I of the Ohio

Constitution. *Id.* The determination of whether a statement is a fact or an opinion is a matter of law to be determined by the court. *Id.*, citing *Vail v. Plain Dealer Publishing Co.,* 72 Ohio St.3d 279, 649 N.E.2d 182 (1995). "[A] statement deemed to be an opinion as a matter of law cannot be proven false." *Wampler v. Higgins*, 93 Ohio St.3d 111, 127, 752 N.E.2d 962 (2001), fn. 8.

**{¶22}** In this case, the trial court failed to make this important determination. The court did not determine whether appellees' made defamatory factual statements, as opposed to simply expressing their opinion. Instead, the court found that appellees made the statements in the context of seeking an accounting from the religious authorities charged with a duty of operating the church and that the statements were claims for which parishioners sought an explanation and redress in a manner reasonably assumed to flow from the organized structure of the church. These findings are akin to finding that appellees are protected by a qualified privilege.

**{¶23}** As set out by the Eighth District:

> Where a plaintiff establishes a prima facie case of defamation, the defendant may invoke a qualified privilege defense. *Daubenmire v. Sommers*, 156 Ohio App.3d 322, 2004-Ohio-914, 805 N.E.2d 571, ¶118. Statements between parties concerning a common business interest may be protected by a qualified privilege. *Evely v. Carlon Co., Div. of Indian Head, Inc.* (1983), 4 Ohio St.3d 163, 165, 447 N.E.2d 1290. Generally, a communication is qualifiedly privileged when it is " 'made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty * * * if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable [.]' " *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 246, 331 N.E.2d 713. The elements needed to prove a privilege are " 'good faith, an interest to be upheld, a statement limited in its scope to this purpose,

a proper occasion, and publication in a proper manner and to proper parties only.' " *Id.*

* * *

Once a defendant demonstrates the existence of the qualified privilege, a plaintiff can only prevail upon a showing of actual malice. *Hanley v. Riverside Methodist Hosp.* (1991), 78 Ohio App.3d 73, 81, 603 N.E.2d 1126.

*Georgalis v. Ohio Turnpike Comm.*, 8th Dist. No. 94478, 2010-Ohio-4898, ¶25, 27.

**{¶24}** Additionally, a qualified privilege is waived if the parties do not properly raise it. *Stepp v. Wiseco Piston Co., Inc.*, 11th Dist. No. 2013-L-059, 2013-Ohio-5832, ¶27.

**{¶25}** The Eleventh District applied qualified privilege in a similar case where the reverend of a church filed a defamation complaint against the deacons alleging that a letter published by the deacons to the congregation stating that the reverend could no longer perform his duties and calling for his resignation was defamatory. The case went to trial and the trial court entered a directed verdict in favor of the deacons. The reverend appealed. On appeal, the Eleventh District found that the deacons were entitled to the defense of qualified privilege because the letter concerned church interests, was written by the deacons, and was published only to other members of the church. Id. at 637.

**{¶26}** Likewise, the trial court in the case sub judice, in entering summary judgment in appellees' favor, essentially found that appellees were entitled to a defense of qualified privilege. The problem with the trial court's finding, however, is that it never determined whether the statements were defamatory and it never actually found that a qualified privilege applied.

**{¶27}** While it is true that an appellate court reviews a trial court's summary judgment decision de novo, we will not consider issues raised in summary judgment proceedings that the trial court failed to rule on. *Conny Farms, Ltd. v. Ball Resources, Inc.*, 7th Dist. No. 09 CO 36, 2011-Ohio-5472, ¶15.

**{¶28}** Because the trial court failed to rule on whether appellant made a prima facie case of defamation, whether a qualified privilege was properly raised and applied, and whether appellant was able to show actual malice, we are unable to properly review its grant of summary judgment or rule on the merits of appellant's assignment of error.

**{¶29}** For the reasons stated above, the trial court's judgment is hereby reversed and remanded for the trial court to determine whether a prima facie case of defamation exists, whether a qualified privilege was properly raised and applies, and whether actual malice exists.

Vukovich, J., concurs.

DeGenaro, P.J., concurs.