[Cite as *Hoffman v. Gunawan*, 2025-Ohio-5697.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

BRIAN J. HOFFMAN

    Appellant

    v.

UPIKIN GUNAWAN

    Appellee

C.A. No.    24AP0030

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    2022 CVC-A 000443

DECISION AND JOURNAL ENTRY

Dated: December 22, 2025

FLAGG LANZINGER, Judge.

{¶1}    Plaintiff-Appellant Brian Hoffman appeals the judgment of the Wayne County Court of Common Pleas granting summary judgment to Defendant-Appellee Upikin Gunawan on his claims against her. We affirm.

I.

{¶2}    Gunawan's minor child ("X") was a member of the Wooster High School Speech and Debate Team. Although X was an excellent student and active in extracurricular activities, his behavior at home caused Gunawan concern. In an effort to address these concerns, Gunawan reached out to X's speech and debate coaches for help. Upon the recommendation of one of his coaches, Gunawan approached Hoffman and inquired if he would be willing to assist her. Hoffman, an attorney practicing immigration law, was also a member of the Wooster High School Speech and Debate coaching staff, but did not directly coach X. Gunawan believed Hoffman could be a positive influence on X. Hoffman agreed.

{¶3} After Hoffman's interactions with X, Gunawan believed Hoffman's involvement was having a negative impact on X. Gunawan sent Hoffman an email requesting he give the family space. After learning Hoffman had continued to interact with X, Gunawan sent Hoffman another email expressly requesting Hoffman stop contacting X. Hoffman responded to Gunawan's email by stating that the Ohio Rules of Professional Conduct prohibited him from discussing any communications he may or may not have had with X and directing Gunawan to contact the Ohio Supreme Court Office of Disciplinary Counsel if she had questions. In his response email, Hoffman also asked Gunawan to stop contacting him.

{¶4} A few days later, Gunawan sent an email directed to two of X's speech and debate coaches. In Gunawan's email, she expressed that Hoffman should have no contact with her minor child and requested he not be permitted to attend X's practices and tournaments. Later that same evening, Gunawan sent another email, this time directed to one of X's speech and debate coaches with the subject line "[Important] Stop contact request[.]" In her email, Gunawan stated, in relevant part, that Hoffman was still contacting X and specifically, that "It is inappropriate for an adult (I'm guessing he is between 39-40 years old) to have any personal relationship with a 16-year-old minor." It is undisputed that the email was sent to at least five other school officials, a court official, a member of law enforcement, and at least one other individual.

{¶5} Less than a week later, Hoffman filed a complaint against Gunawan asserting claims of slander, false light, and tortious interference with a contract. Gunawan filed a timely answer and counterclaim asserting claims against Hoffman for tortious interference with parental rights and contributing to the unruliness of a child. The matter proceeded through the pretrial process.

{¶6} After a year of litigation, Hoffman filed an amended complaint asserting claims of defamation per se, defamation per quod, slander, false light, two counts of tortious interference with a contract, and intentional infliction of emotional distress. Hoffman also sought a declaratory judgment that Gunawan had violated Hoffman's rights, compensatory damages, punitive damages, costs, attorney's fees, and any other relief that the court deemed appropriate.

{¶7} Gunawan filed a timely answer and amended counterclaim. In her amended counterclaim, Gunawan asserted a claim against Hoffman for intentional interference with parental rights. Hoffman filed a timely answer to Gunawan's counterclaim.

{¶8} After a period of discovery, Gunawan filed a motion for summary judgment as to Hoffman's claims. Hoffman filed a combined opposition to Gunawan's summary judgment motion and cross-motion for summary judgment (hereinafter "Combined Motion").

{¶9} Relevant to this appeal, the trial court issued a judgment entry granting Gunawan's motion for summary judgment as to all of Hoffman's claims. The trial court concluded that, based upon the totality of the circumstances, Gunawan's emailed statement was an opinion and not actionable as defamation. The trial court further concluded that although Hoffman referenced rumors and innuendo, he did not point to any other statements made by Gunawan that he alleged were defamatory. The trial court entered judgment in favor of Gunawan on all of Hoffman's claims.

{¶10} Hoffman filed this timely appeal, raising four assignments of error. For ease of analysis, we combine Hoffman's first two assignments of error.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT AGAINST PLAINTIFF'S CLAIMS, WHICH PRIMARILY ALLEGED DEFAMATION AND SLANDER[.]**

**ASSIGNMENT OF ERROR II**

**THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT WAS MERELY STATING OPINIONS[.]**

{¶11} In his first assignment of error, Hoffman argues the trial court erred in granting summary judgment to Gunawan and against Hoffman on his claims for defamation because (1) Gunawan's emailed "statement was *not* merely a statement of her opinion, but . . . necessarily contained underlying factual claims[,]" and (2) "the trial court's conclusion that [Hoffman]'s evidence 'reference[d] rumors and innuendo' but did not have any 'actual statements from Defendant making such comments' is a misreading of the record." In his second assignment of error, Hoffman claims that the trial court erred when it found Gunawan's emailed statement was an opinion. We disagree.

{¶12} Initially, we note that Hoffman has not raised a specific argument on appeal addressing why it was error for the trial court to grant Gunawan summary judgment on Hoffman's claims for false light invasion of privacy, tortious interference with a contract, or intentional infliction of emotional distress. When an appellant fails to develop an argument in support of his assignment of error, this Court will not create one for him. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 1998 WL 224934, *8 (9th Dist. May 6, 1998). "If an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone* at *8.

{¶13} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "We apply the same standard as the trial court, viewing

the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party." *Husa v. Knapp*, 2020-Ohio-6986, ¶ 19 (9th Dist.), citing *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist. 1983).

{¶14} Pursuant to Civ.R.56(C), summary judgment is appropriate when:

(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a motion for summary judgment, the movant must first be able to point to evidentiary materials demonstrating there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293, quoting Civ.R. 56(E).

{¶15} "To prevail in a defamation case, a plaintiff must demonstrate five elements:

(1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement."

*Fisher v. Ahmed*, 2020-Ohio-1196, ¶ 32 (9th Dist.), citing *Am. Chem. Soc. v. Leadscope, Inc.*, 2012-Ohio-4193, ¶ 77. "There are two kinds of defamation; defamation per se occurs when material is defamatory on its face; defamation per quod occurs when material is defamatory through interpretation or innuendo." *Fisher* at ¶ 33, citing *Gosden v. Louis*, 116 Ohio App.3d 195, 206 (9th Dist. 1996). "An allegedly slanderous or libelous statement is actionable as defamation per se if it:

(1) alleges an indictable criminal offense involving moral turpitude; (2) imputes a loathsome or contagious disease that would exclude a person from society; (3) tends to injure a person in his trade or occupation; and, additionally, (4) written matter is libelous per se if it tends to subject a person to public hatred, ridicule, or contempt.

*Fisher* at ¶ 33, citing *Dunnigan v. City of Lorain*, 2002-Ohio-5548, ¶ 35 (9th Dist.); *Gosden* at 207. "Written defamation is known as libel; spoken defamation is known as slander." *Gosden* at 206.

{¶16} In her motion for summary judgment, Gunawan argued in part that she was entitled to summary judgment on Hoffman's claims of defamation per se, defamation per quod, and slander because (1) the statement, "[i]t is inappropriate for an adult (I'm guessing he is between 39-40 years old) to have any personal relationship with a 16-year-old minor[,]" at issue in Hoffman's complaint was not actionable because it was an opinion and not a statement of fact, and (2) Hoffman's assertion that Gunawan's use of the term "inappropriate" implied "some sort of sexual undertone or allegation of 'grooming'" had no merit. In support of her motion, Gunawan relied upon her own affidavit, copies of several emails she sent to Hoffman and/or individuals associated with Wooster City School District or the speech and debate team, emails sent to her by Hoffman and/or individuals associated with the Wooster City School District or the speech and debate team, and a written correspondence from her legal counsel to the Wooster High School principal.

{¶17} In response to Gunawan's motion for summary judgment, Hoffman agreed "there are no issues of fact about which reasonable minds may differ," but asserted Gunawan's written statement was a false statement of fact because it *implied* an allegation that the relationship between Hoffman and X was both personal and inappropriate instead of professional and appropriate. Although Hoffman's response does not expressly state that Gunawan was implying Hoffman was pursuing her son for a sexual relationship and/or had a sexual relationship with her son, his amended complaint alleges that "when made against the backdrop of many recent high-

profile cases of illegal student-teacher sexual conduct (some of which occurred in Wooster),” Gunawan’s statement was “defamatory *per quod* due to facts external” to Gunawan’s email. Hoffman supported his response to the motion for summary judgment by pointing to the affidavits of a Wooster High School Speech and Debate team coach and the parent of a student member of the team.

{¶18} Whether an allegedly defamatory statement is actionable as defamation is a question of law. *Leadscope*, 2012-Ohio-4193, at ¶ 78, quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 6 Ohio St.3d 369, 372 (1983), *abrogated on other grounds by Welling v. Weinfeld*, 2007-Ohio-2451. A court must consider the allegedly defamatory statement in the totality of the circumstances, including “reading an alleged defamatory statement in the context of the entire publication to determine whether a reasonable reader would deem the statement defamatory.” *Fisher*, 2020-Ohio-1196, at ¶ 50 (9th Dist.), citing *Leadscope* at ¶ 79.

{¶19} “The right to sue for damage to one’s reputation pursuant to state law is not absolute. Instead, the right is encumbered by the First Amendment to the United States Constitution.” *Soke v. Plain Dealer*, 69 Ohio St.3d 395, 395 (1994). Additionally, “[t]he Ohio Supreme Court has held that ‘[t]he Ohio Constitution provides a separate and independent guarantee of protection for opinion ancillary to freedom of the press.’” *Sturdevant v. Likley*, 2013-Ohio-987, ¶ 8 (9th Dist.), quoting *Vail v. The Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 281 (1995). “In granting the opinion privilege to a defendant in a defamation action, the Ohio Supreme Court has interpreted this constitutional provision as providing a *stronger* protection for opinions than the First Amendment to the United States Constitution.” (Emphasis in original.) *Concrete Creations & Landscape Design LLC v. Wilkinson*, 2021-Ohio-2508, ¶ 31 (7th Dist.), citing

*Wampler v. Higgins*, 93 Ohio St.3d 111, 116-117, 132 (2001) and *Vail v. The Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 281 (1995). This protection extends to both media defendants and private citizens. *Sturdevant*, at ¶ 9, citing *Wampler* at 112.

{¶20} When determining "whether a statement is actionable as a statement of fact, or not actionable as a statement of opinion, courts apply the four-part *Scott/Vail* test to consider: (1) 'the specific language used,' (2) 'whether the statement is verifiable,' (3) 'the general context of the statement,' and (4) 'the broader context in which the statement appeared.'" *Fisher*, 2020-Ohio-1196, at ¶ 51 (9th Dist.), quoting *Vail* at 282, citing *Scott v. News-Herald*, 25 Ohio St.3d 243, 250 (1986). "The weight given to any one factor under this inquiry will vary depending on the circumstances of each case." *Wampler* at 126 , citing *Vail* at 282.

{¶21} In reviewing the specific language used, a court should consider both the common meaning of the words used and what the specific language would mean to an ordinary reader. *Sturdevant* at ¶ 11, citing *Scott* at 250; *Vail* at 279. A court "must determine whether a reasonable reader would view the words used to be language that normally conveys information of a factual nature or hype and opinion; whether the language has a readily ascertainable meaning or is ambiguous." *Vail* at 282. "[S]tatements that are 'loosely definable' or 'variously interpretable' cannot in most contexts support an action for defamation.'" *Wampler* at 126, citing *Ollman v. Evans*, 750 F.2d 970, 980 (D.C. Cir. 1984). "[T]he mere fact that an opinion rests on facts does not transform opinion into fact." *Byrne v. Univ. Hosps.*, 2011-Ohio-4110, ¶ 19 (8th Dist.), citing *Wampler* at 129.

{¶22} "The Ohio Supreme Court has stated that 'when the *meaning* of an allegedly defamatory statement is in question, courts apply an objective 'ordinary reader' test to determine whether an allegedly libelous statement is a false statement of fact." (Emphasis in original.)

*Gaydosh v. Procop*, 2006-Ohio-6557, ¶ 12 (9th Dist.), quoting *Wampler*, 93 Ohio St.3d at 122. "Furthermore, the Ohio Supreme Court has recognized the 'innocent construction rule,' which states that 'if allegedly defamatory words are susceptible to two meanings, one defamatory and one innocent, the defamatory meaning should be rejected, and the innocent meaning adopted.'" *Gaydosh* at ¶ 12, quoting *Yeager*, 6 Ohio St.3d at 372.

{¶23} In considering whether a statement is verifiable, "[w]e seek to determine whether the allegedly defamatory statements are objectively capable of proof or disproof . . . ." *Wampler* at 129. If a statement "lacks a plausible method of verification, a reasonable reader will not believe that the statement has specific factual content" and will instead understand the statement to be "value-laden and represents a point of view that is obviously subjective." *Vail* at 283, quoting *Scott*, 25 Ohio St.3d at 251-252. There exists an "obvious potential for quashing or muting First Amendment activity" when courts "attempt to assess the truth of a statement that admits of no method of verification." *Wampler* at 129, quoting *Ollman* at 981-982.

{¶24} In viewing the context of the statement, we "look at the combined statements made by [Gunawan] and that nature of the exchange in order 'to assess the "larger objective and subjective context of the statement."'" *Niotti-Soltesz v. Piotrowski*, 2017-Ohio-711, ¶ 23 (11th Dist.), quoting *Gilson v. Am. Inst. of Alternative Medicine*, 2016-Ohio-1324, ¶ 63 (10th Dist.), quoting *Scott* at 252. "We examine more than simply the alleged defamatory statements in isolation, because the language surrounding the averred defamatory remarks may place the reasonable reader on notice that what is being read is the opinion of the writer." *Wampler* at 130. This factor "may be weighed in favor of a finding of protected opinion if the context demonstrates the writer 'is not making an attempt to be impartial' and 'no secret is made of [her] bias.'" *Wilkinson*, 2021-Ohio-2508, at ¶ 37 (7th Dist.), quoting *Scott* at 253 ("noting a reader of the words

in context would 'hard pressed' to accept the statements as impartial reporting."). "For example, if apparently defamatory statements are contained in a letter clearly meant to be a persuasive statement of the declarant's opinion, then they are not actionable." *Rothschild v. Humility of Mary Health Partners*, 2005-Ohio-5481, ¶ 22 (7th Dist.), citing *Jorg v. Cincinnati Black United Front*, 2003-Ohio-3668, ¶ 21 (1st Dist.) ("statements in letter were not defamatory since letter was advocacy, not objective news").

{¶25} "[W]e also examine "the broader social context into which the statement fits [because s]ome *types of writing or speech by custom or convention* signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." (Emphasis in original) *Wampler* at 131, quoting *Ollman* at 983. "This fourth factor focuses, then, not merely on the internal context within which a particular written statement appears, but on the unmistakable influence that certain 'well established genres of writing will have on the average reader.'" (Emphasis in original.) *Wampler* at 131, quoting *Ollman* at 984.

{¶26} Although Hoffman alluded in his complaint to several oral defamatory statements he believes Gunawan made about him, he only identified one specific statement Gunawan made that he claims was defamatory. The amended complaint shows that the only specific statement Hoffman identified as allegedly defamatory was Gunawan's statement that "It is inappropriate for an adult (I'm guessing he is between 39-40 years old) to have any personal relationship with a 16-year-old minor," which Gunawan included in an email with the subject line "[Important] Stop contact request" addressed to one of X's speech and debate coaches. It is undisputed that several additional individuals were copied on the email. That email stated in full:

Dear Mrs. [C],

As of tonight, Friday, October 21, 2022, 8:40 PM, Brian Hoffman is still contacting [X] and scheduling meetings. [X] said the meeting is at school but refused to

provide any more details. Please take action and tell him to cease contacting [X]. It is inappropriate for an adult (I'm guessing he is between 39-40 years old) to have any personal relationship with a 16-year-old minor.

I will have to pull [X] out of the WHS Speech and Debate team if he disrespects my stop-contact request of October 18, 2022, copied below this email.

Thank you for your good cooperation,

Respectfully,

[Gunawan]

**{¶27}** Based on the totality of the circumstances in this case, we conclude that Gunawan's statement in this email cannot support a defamation claim as a matter of law. First, the specific language used by Gunawan is value-laden hyperbole representing a subjective viewpoint. Second, although the words "inappropriate" and "personal" are definable, whether a specific relationship can be defined as "inappropriate" and/or "personal" will vary reader to reader and is not objectively verifiable. Finally, considering allegedly defamatory statement in the entire context of Gunawan's email, we conclude that an ordinary reader would understand Gunawan was expressing her opinion that a continued relationship between an adult and a child—where the child's parent has expressly asked the adult to stop contacting the child—is inappropriate. Immediately preceding the allegedly defamatory statement, Gunawan states that her son informed her that Hoffman scheduled a meeting with him on school grounds despite Gunawan's request that he cease contacting X. She then pleads with the recipients of the email to "take action" and tell Hoffman to cease contacting her son. Notably, Hoffman does not dispute that Gunawan requested he stop contacting her minor child nor does he dispute that he continued to do so despite this request.

**{¶28}** Gunawan sent this email after she learned Hoffman had disregarded her request— a request she made because she believed Hoffman's involvement with X was a bad influence on his behavior. In this context, Gunawan's statement that a personal relationship between an adult

and minor child is inappropriate is plainly hyperbole presented to persuade the recipients to help her convince Hoffman to cease contacting X. In viewing Gunawan's email as a whole, no reasonable reader would understand that Gunawan was implying that Hoffman was engaging in a sexual relationship with her minor child.

{¶29} On appeal, Hoffman contends that his reference to the affidavit of a member of the Wooster High School Speech and Debate Team coaching staff in response to Gunawan's motion for summary judgment was sufficient to show Gunawan was insinuating Hoffman "could be grooming her son." However, when the meaning of an allegedly defamatory statement is in question, the question is whether "an objective 'ordinary reader'" would consider the allegedly libelous statement to be a false statement of fact, and not whether any specific individual inferred meaning from allegedly defamatory statement. *See Gaydosh*, 2006-Ohio-6557, at ¶ 12 (9th Dist.), quoting *Wampler*, 93 Ohio St.3d at 122. Regardless, our review of the coach's affidavit shows that the coach does not identify *any* specific statements made by Gunawan, let alone the statement Hoffman alleges was defamatory, as the basis for her own inference that Gunawan was implying Hoffman "could be grooming her son." Instead, the coach's affidavit merely alludes to the content of rumors she claims Gunawan "was spreading rumors through other parents . . . ." The affidavit does not assert any personal knowledge of any actual statement made by Gunawan nor any basis for the affiant's belief that Gunawan was responsible for the unspecified rumors.

{¶30} We conclude that the allegedly defamatory statement in Gunawan's email cannot support a defamation claim as a matter of law. Therefore, we further conclude that Gunawan met her burden to demonstrate there were no genuine issue as to any material fact and that she was entitled to judgment as a matter of law on Hoffman's claims for defamation per se, defamation per quod, and slander. *See Dresher*, 75 Ohio St.3d at 292.

**{¶31}** Hoffman's first and second assignments of error are overruled.

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED IN FAILING TO GRANT PLAINTIFF'S MOTION FOR A BAD FAITH FINDING UNDER RULE 56(G)[.]**

**{¶32}** In his third assignment of error, Hoffman contends the trial court erred when it failed to find Gunawan's affidavit in support of her motion for summary judgment was filed in bad faith pursuant to Civ.R. 56(G). We disagree.

**{¶33}** In his Combined Motion, Hoffman asked the trial court to "find that [Gunawan]'s affidavit in support of her summary judgment motion is in bad faith pursuant to Rule 56 (G)." However, a review of the motion shows that Hoffman did not develop an argument related to this request nor did he move the court for any specific sanction related to such a finding. Instead, Hoffman asserted under the subheading **"COUNT FIVE TORTIOUS INTERFERENCE WITH CONTRACT – WOOSTER CITY SCHOOLS**" that Gunawan's statement in her affidavit that she was unaware of whether Hoffman had a contract with Wooster City Schools was "false" based on a statement she made in an earlier email she sent to two other speech and debate team coaches wherein she stated "As a speech and debate coach, he is a Wooster City School (WCS) employee who is bound to follow the WCS rules."

**{¶34}** The trial court did not expressly rule on Hoffman's request for a finding of bad faith related to Gunawan's affidavit in its judgment entry. However, "'[i]n circumstances where the trial court fails to expressly rule on a motion prior to entering judgment, this Court presumes on appeal that the pending motion was implicitly denied.'" *Bencin v. Bencin*, 2016-Ohio-54, ¶ 17 (9th Dist.), quoting *Rothschild v. Eckstein*, 2010-Ohio-4285, ¶ 19 (9th Dist.). "In reviewing the denial of a Civ.R. 56(G) motion, we apply an abuse of discretion standard." *DeepRock Disposal*

*Solutions, LLC v. Forté Prods., LLC*, 2021-Ohio-1436, ¶ 42 (4th Dist.). An abuse of discretion is more than an error in judgment and implies that the court's judgment was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶35} Pursuant to Civ.R. 56(G),

> Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

Generally, "'[b]ad faith' means 'a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will. It partakes of the nature of fraud. It also embraces actual intent to mislead or deceive another.'" *DeepRock Disposal Solutions, LLC* at ¶ 51, quoting *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 151 (1962), *overruled on other grounds by Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552 (1994).

{¶36} Hoffman does not point to any evidence that Gunawan filed her affidavit in bad faith. Standing alone, Gunawan's recognition of Hoffman as a school employee, bound by the rules of the school district, does not show Gunawan had any personal knowledge that Hoffman had a contract with the Wooster City School District. Hoffman's assertion to the contrary would require this Court to make an illogical inference that because Gunawan identified Hoffman as an employee, she also knew he had a contract with the school district. Therefore, the trial court did not abuse its discretion by failing to find Gunawan's affidavit in support of her motion for summary judgment was filed in bad faith.

{¶37} In addition to Hoffman's stated assignment of error, Hoffman asserts for the first time on appeal that Gunawan's legal counsel violated Civ.R. 11 by notarizing Gunawan's affidavit. "'It is well-settled that this Court will not address arguments for the first time on appeal.'"

*Frankowski v. Mahl*, 2024-Ohio-1202, ¶ 15 (9th Dist.), quoting *State v. Williamson*, 2022-Ohio-185, ¶ 31 (9th Dist.).

**{¶38}** Hoffman's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

**THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT TO PLAINTIFF ON PLAINTIFF'S CLAIMS[.]**

**{¶39}** In his fourth assignment of error, Hoffman states that the trial court erred in denying his motion for summary judgment on his claims against Gunawan because "no reasonable mind could conclude that she was not at the very least reckless in sending emails to school and law enforcement authorities alleging that an 'inappropriate' and 'personal' relationship existed between [Hoffman] and her son." However, Hoffman does not develop this argument. When an appellant fails to develop an argument in support of his assignment of error, this Court will not create one for him. *See* App.R. 16(A)(7); *Cardone*, 1998 WL 224934, at *8 (9th Dist. May 6, 1998). "If an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone* at *8.

**{¶40}** Hoffman's fourth assignment of error is overruled.

### III.

**{¶41}** Hoffman's first, second, third, and fourth assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

CARR, J.
SUTTON, J.
CONCUR.

APPEARANCES:

BRIAN J. HOFFMAN, Attorney at Law, pro se, Appellant.

UPIKIN GUNAWAN, pro se, Appellee.